# UNITED STATES DISTRICT COURT EASTERN DISTRICT
## OF CHATTANOOGA, TENNESSEE



DOUGLAS A DYER

*Petitioner*

V.

MICHELLE FULGAM, in her capacity

As Acting Manager of the Nashville, TN

RRM, with responsibility of the

Chattanooga, Tn Halfway House

*Respondent*

Civ. A. No 1:21-cv-299

*Collier / Steger*

## VERIFIED PETITION FOR A WRIT OF HABEAS CORPUS

## UNDER 28 U.S.C. 2241

Douglas A. Dyer #52293-074

179 Callaway Ct

Chattanooga, Tn 37421

423-661-1729  dougdyer11@gmail.com


Michelle Fulgam, Acting Manager, Nashville, Tn RRM

Residential Reentry Office

400 State St., Ste 800

Kansas City, KS 66101

913-551-1139

Petitioner Douglas Dyer, pro se, respectfully submits this Verified Petition for a Writ of Habeas Corpus, pursuant to 28 USC. 2241, along with the accompanying documents.

## PRELIMINARY STATEMENT

1. I, Douglas Dyer am presently on Home Confinement, but under the law I should have been moved to Supervised Release in April, 2021. Sentenced to five years in prison in 2017, I have been a model prisoner, and have taken advantage of the educational, rehabilitation, and anti-recidivism programming opportunities that the Bureau of Prisons ("BOP") provided me.

2. Congress, in passing the historic First Step Act("FSA"), provided prisoners committed to avoiding recidivism the ability to earn early release by such efforts. I completed qualified programming and productive activities during my sentence that, under the First Step Act, earned me time credits, known as Earned Time Credits.

3. Per the Act, I am to receive 15 days of Earned Time Credit for every 30 days of anti-recidivism programming or productive activities completed. Earned Time Credits are required by the Act to be applied to the time I am eligible for accelerating the date on which my period of supervised release begins.

4. I have accumulated 229 days of Earned Time Credits, enough to have earned My release from Home Confinement on July 19, 2021. In addition, as was the intent of Congress, via an on the record letter and directive from Senators Durbin and Grassley, I am to receive Earned Time Credits under the FSA, for a job while on CARES Act Home Confinement. The BOP has refused to credit me with any of my Earned Time Credit. In fact, as far as I can tell they have failed to even attempt to calculate the amount of Earned Time Credit that I am due.

5. I have made multiple efforts to have my Earned Time Credit applied, both with my case managers at FMC Lexington and with the RRC in Chattanooga. At every turn, my efforts were either rejected or ignored.

6. In refusing to provide me with the credit that I have earned, the BOP is unlawfully frustrating the First Step Act and the express direction of Congress. In fact, The Senate Judiciary Committee of 21 distinguished Senators, who were the authors and the sponsors of the FSA, sent a letter and directive to

*1*

the Attorney General on May 5, 2021, that basically agree with all of my claims and chastised the BOP for their delay in awarded Earned Time Credits and for the BOP to not adhere to the clear intent of Congress and follow the Act and the law as it is clearly written.

7.     Accordingly, I now seek the help of this Court via writ of habeas corpus, the so-called "Great Writ," to obtain the proper date to be moved to supervised release that I earned under FSA, that BOP has illegally refused me, and to which I have a legal right to under the Constitution and the laws of the United States.

## THE PARTIES

8.     Petitioner, Douglas A Dyer, is a sixty-two year old male formerly incarcerated at Lexington FMC in Lexington, Kentucky ("Lexington FMC"). My prisoner identification number is 52293-074. Currently on Home Confinement via The CARES Act.

9.     Respondent Michelle Fulgam is the Manager of the Nashville, Tennessee RRM that is responsible for The Halfway House, for Chattanooga, Tennessee and is being sued in her official capacity. Respondent is in charge of the Chattanooga, Tennessee Halfway House that is monitoring my Home Confinement.

## JURISDICTION AND VENUE

10.     Petitioner brings this action pursuant to 28 USC. 2241 for relief from unlawful Detention that violates my rights under the U.S. Constitution, including my Fifth Amendment rights.

11.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 2241 (habeas corpus), 28 U.S.C 1651 (All writs Act), Amend. V of the U.S. Constitution, and 28 US.C. 1331 (federal question).

12.     Venue is proper in the Eastern District of Tennessee pursuant to 28 U.S.C. 224l(d) Because Petitioner is in custody in this judicial district and venue. Venue is also proper pursuant To 28 U.S.C. 1391(b)(2) because a substantial part of the events and omissions giving rise to These claims occurred in this district.

## BACKGROUND

13.     On September 29, 2017 Judge Travis McDonough of the United States District Court for

2

The Eastern District of Tennessee sentenced Me to 60 months in prison, with an additional term Of 3 years supervised release. This sentence was imposed as a result of a plea agreement with The Government.

14. I began serving my sentence on December 1, 2017. My initial projected release date is March 4, 2022, and my elderly offender date was March 31, 2021.

15. I have served as a model prisoner, enthusiastically engaging in every opportunity to better myself. I have taken advantage of the various classes offered by the BOP, assigned, directed and encouraged by my Case Manager at Lexington FMC, including serving an apprenticeship as a Dental Assistant, in the customer service area of UNICOR as the senior employee in the Waiver department, worked in Food Services and studied for and passed the national exam with "The American Society for Quality" ("ASQ") as a Certified Quality Improvement Associate (certification #14827). I have completed classes in Self Improvement, Non-Residential Drug Abuse program, health-related classes, been an instructor in Health Core, coached several Prison softball teams, attended church services, organized Bible studies as well as completed several various general education classes, such as history, finance, and Occupational Therapy. Also completed the comprehensive BOP Threshold Program that prepares inmates for life after Prison.

16. UNICOR is a prison industry and Lexington FMC serves as the customer service hub for the entire BOP. I was the senior inmate employee in the Waiver Department and worked with suppliers and vendors both in the BOP and outside Government Agencies. I was promoted and given pay raises and bonuses for extraordinary work. I was a full-time employee and worked in UNICOR for 147 days from September of 2019 through March of 2020. UNICOR has been shown to decrease recidivism. A BOP study, the Post-Release Employment Project, found that prisoners who participated in UNICOR "were 24% less likely to revert to criminal behavior as much as 12 years following release and 14% more likely to be gainfully employed following release from prison." Id Prisoners who participated in UNICOR "were also less likely to engage in prison misconduct while still incarcerated." Id. These anti-recidivist effects were increased for

minority prisoners.

17.     I also have been employed full time since July 10, 2020 as the Marketing Manager at
Bacon Products, a company that has been in business in Chattanooga since 1944. I have worked
17 months with perfect attendance and in fact have not even taken a day of personal vacation.
In the letter and directive from the Senate Judiciary Committee, of May 5, 2021, Senators
Durbin and Grassley, the authors of the FSA said "In fact, the FSA specifically anticipated that
prisoners on home detention would continue to participate in programming, productive
activities and jobs......."Therefore at the very least since I am on home confinement under the
CARES Act I should earn Time Credits under the FSA for these 17 months. By going on the
record with the Senate Committee stating this, it is indisputable that inmates on home
confinement can continue to earn and be **awarded FSA Earned Time Credits.**

18.         In addition to classes that I completed prior to December 21, 2018 ( date of
enactment of the First Step Act and the date that federal prisoners can begin to earn Time
Credits) I completed the following classes, jobs and productive activities("PA"): (completed on
or after 12/21/18)

| CLASS, JOB or PA | DAYS OF PROGRAMMING |
|---|---|
| UNICOR | 147 |
| Food Services | 61 |
| Non-Residential Drug Abuse | 8 |
| BOP Threshold Re-Entry Program | 16 |
| Positive Attitude and Self-Esteem | 10 |
| Resume and Interview Skills | 7 |
| AARP Finance over 50 years old | 5 |
| Health and Nutrition | 1 |
| Money Smart | 10 |
| Occupational Therapy "A Matter of Balance" | 9 |
| Instructor, Health Core Topic | 32 |

| | |
|---|---|
| ASQ Certified Quality Improvement Certification Class | 14 |
| ASQ Certification test (passed) | 1 |
| ACE Forex Trading Class | 8 |
| ACE United States Presidency | 8 |
| ACE World War I | 8 |
| Christian Non-denominational services (usher) | 74 |
| The History of the Church | 20 |
| Martin Luther Catechism Phase I | 20 |
| **TOTAL DAYS of programming, work and PA's** | **459** |
| **TOTAL DAYS of work on CARES ACT Home Confinement (7/2020 – 11/2021)** | **340** |

### The First Step Act and Earned Time Credit

19.        The First Step Act, Pub. L. No. 115-391, 132 Stat 5194 (codified as amended in scattered sections of 18 U.S.C. and 34 U.S.C.), was enacted by Congress on December 21, 2018. It was engineered to reduce prison overcrowding by identifying individuals with a low risk for recidivism and providing them the opportunity to access additional privileges or further reduce their sentences by engaging in certain beneficial activities. 18 U.S.C. 1361, 1362(a)(l)-(8), 1365(3),

20.        The First Step Act's legislative history reflects that Congress intended that it give "prisoners incentives to earn skills in prison so that they can be productive members of society after they have paid their debt." Senator Blumenthal (CT). "Bipartisanship." Congressional Record 164: 199 (Dec. 18, 2018) p. S7745. "Under this legislation, low-risk offenders will be able to earn credit by completing anti-recidivism programs that help better prepare them for life after prison." Senator Menendez (NJ). "First Step Act." Congressional Record 164: 199 (Dec. 18, 2018) page S7752. "We know that when prisoners are equipped with the right tools and resources, they are better able to reintegrate into society and avoid old behaviors that could

result in winding up back behind bars. That is not only good for them, it is good for their families and good for their acceptance into society." Former Attorney General William Barr stated that... " the First Step Act provides 'inmates [with] even greater incentive to participate in evidence-based programs that prepare them for productive lives after incarceration." Department of Justice Announces Enhancements to the Risk Assessment System and Updates on First Step Act Implementation, Department of Justice Office of Public Affairs, January 15, 2020, https://www.justice.gov/opa/pr/departmentjustice-announces-enhancements-risk-assessmentsystem-and-updates-first-step-act. He noted that "this is what Congress intended with this bipartisan bill." Id. "The First Step Act is an important reform to our criminal justice system, and the [DOJ] is committed to implementing the Act fully and fairly." Id

21. Among the various incentives included in the First Step Act are credits colloquially known as "Earned Time Credit." See 18 U.S.C. 3632(d)(4). These are incentives earned by prisoners as a result of their successful participation in either evidence-based recidivism reduction ("EBRR") programming or productive activities, each of which is defined in the Act. They are applied "in addition to any other rewards or incentives for which a prisoner may be eligible." 18 U.S.C. ~J632(d)(6)

22. The Act defines an EBRR program as "either a group or individual activity" that: (A) "has been shown by empirical evidence to reduce recidivism" or is **likely** to be effective in doing so; or (B) "is designed to help prisoners succeed in their communities upon release from prison. 18 U.S.C 3635(3). EBRR Programs may include activities such as "**academic classes**," "**substance abuse treatment**," "**vocational training**," "**religious services**" or "**a prison job, including through a prison work program**." Id.

23. The First Step Act expressly states that prisoners may earn time credits for EBRR programs completed on or after December 21, 2018, the date of enactment of the Act. 18 USC 3632(d)(4)(B) "Productive activity" is defined by the Act as "either a group or individual activity that is designed to allow prisoners determined as having a minimum or low risk of recidivating to remain productive and thereby maintain a minimum or low risk of recidivating .... " 18 u.s.c.

6

3635(5). The BOP may argue that the FSA would allow the BOP to award credit only for programming completed after January 15, 2020. This would directly contradict the plain language of the First Step Act, which flatly states that prisoners can earn credit for programming completed on or after the First Step Act's enactment date, December 21, 2018. As well as, and proven without a shadow of doubt, Congressional intent. With proof from the attached letters and directives from Senators Grassley and Durbin, the other 21 members of the Judiciary Committee who actually authored, drafted and passed the FSA. Leaving no room for any other interpretation by the BOP

## BOP Ignored the Act's Mandate For Immediate Utilization of Earned Time Credit Incentives, Pursuant to 18 USC 3621(h)(4)(6)(2019)

24.     The BOP *should have* utilized FSA of 2018 Earned Time Credit incentives *immediately on and after December 21, 2018*, by permitting inmates to earn FSA early release time credit incentives, through successful completion of previously existing programs and activities, but did not. These matters are cited in Section 102 of the Act, in subsection (4), thereof, and codified in 18 USC 3621(h)(4)(2019). The word "may" really means "must" for purposes of 18 USC 3621(h)(4)(2019) interpretation. 1) Legislative intent (which is proven in attached letters) for the FSA to grant immediate relief on or after December 21, 2018 and creating substantive rights for inmates; 2) Obvious inferences, from a common sense principle of statutory construction; and 3) The structure and purpose of 18 USC 3621(h) specifically, and how that provision relates to other provisions of the FSA. The "may" contained in Subsection (4) merely granted permission to the BOP to use previously existing programs and activities in existence as of December 21, 2018, as authority to grant immediate relief to inmates, who are entitled to earn time credits during their period of incarceration, pursuant to Subsection (6). Congress recognized that there would be a preliminary phase in period, between December 21, 2018 and July 19, 2019 and the grant of authority to the BOP in Subsection (4) was intended to be the means for an inmate to earn time credits immediately, on and after December 21, 2018. The preliminary phase in period, is the time period from December 21, 2018 and prior to

7

the new "system" release from the Attorney General's office, that was due July 19, 2019.

FSA Sec. 102 (4) states:

"(4) PRELIMANARY EXPANSION OF EVIDENCED-BASED RECIDIVISM

REDUCTION PROGRAMS AND AUTHORITY TO USE INCENTIVES

Beginning on the date of enactment (12/21/2018) this subsection

The BOP *may* begin to expand any evidence-based recidivism

Reduction programs and *productive activities that exist* at a prison

As of such date, *and may offer* to *prisoners who successfully*

*Participate in such programs and activities the incentives and rewards*

*Described in subchapter D"* Id.; See also 18 USC 3621(h)(4)(2019)

"While the word "may" in a statute creates a presumption of some degree of discretion, this presumption can be *defeated by indications of **legislative intent*** (proven by letters and directives from Congress attached) *to the contrary or by obvious inferences from the structure and purposes of the statute. Cortez Byrd Chips, Inc v. Bill Harbert Constr. Co. 529 US 193, 198-199 (2000)*

(The word "may" in a statute "usually implies some degree of discretion, *but this Common-sense principle of statutory construction. . . can be defeated by indications of **legislative intent** to the contrary or by obvious inferences from structure and purpose of the statute") Usmani v US Attorney General., 483 F.3d 1147, 1150-1151 (11th Cir. 2007)*

(The word 'may' in a statute creates a presumption of some degree of discretion, but "this presumption *can be defeated by indications of **legislative intent** to the contrary or obvious inferences from the structure and purpose of the statute") (quoting DirectTV, Inc v. Brown, 371. F.3d 814, 817 (11th Cir. 2004))*

25.     All prisoners not subject to deportation are eligible for incentives and rewards for completed programming and productive activities, including Earned Time Credit, provided that they were not convicted of one of a list of enumerated offenses contained in 18 USC 3632(d)(4)(D)(i)- (lxviii). Prohibitive crimes include, inter alia, those relating to: drive by shootings; chemical weapons; genocide; sexual abuse, and terrorism. See 18, USC. Ji§§ 3532(d)(4)(D.)(Hi),(xi), (xxiv), (xxxvii), (xlvii);3632( d)( 4)(E)(E)

*8*

26.     An eligible prisoner "shall earn 10 days of time credits for every 30 days of successful participation in [EBRR] programming or productive activities. " 18 U.S.C. 3632(d)(4)(A). An eligible prisoner who is "determined by the [BOP] to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities" for a total of 15 days of Earned Time Credit for every 30 days of successful programming. Id. (The recidivism assessment process is set forth at 18 U.S.C. 3632(a).)

27.     Pursuant to the Act, Earned Time Credit "shall be applied toward **prerelease custody** or **supervised release**." 18 U.S.C. 3632(d)(4)(C). If part of the prisoner's sentence includes a term of supervised release, the Director of the [BOP] may transfer the prisoner to begin any such term of supervised release at any earlier date, not to exceed 12 months, based on the application of Earned Time credits under section 3632. 18 U.S.C. § 3.624(g)(3)

28.     On or around December 3, 2019 I received from my case manager my PATTERN score and authorization that my PATTERN score made me Eligible for the First Step Act and a recidivism level of Minimum. On or around April 11, 2020 my case manager gave me a second evaluation in anticipation of me being sent to Home Confinement under the CARES Act and My score was still "Eligible" and "Minimum", thus triggering the additional 5 days of Time Credits for every 30 days of successful participation in Evidence-Based Recidivism Programs and Productive Activities. I was now eligible for 15 days of Time Credits for every 30 days of programming and participation.

29.     All of these programs, a total of 459 days of programming, as well as 340 days of BOP-approved work that were completed on or after December 21, 2018, the date on which the First Step Act was enacted, and thus qualify for Earned Time Credit under the Act.

30.     My 459 days of successful programming equals 15.30 months (30-day periods) of credit. Applying 15 days of Earned Time Credit for each 30-day period of successful programming, as required by the Act, results in a total of **229 days of Earned Time Credit** that I

earned. My 340 days of BOP-approved work while on home confinement equals 11.33 months (30-day periods) of credit. Applying 15 days of Earned Time Credit for each 30-day period, as required by the FSA, results in **169 days of Earned Time Credit** that I have earned.

31.        Based on the Earned Time Credits afforded me by the First Step Act, the date I should have been moved to supervised release and off of home confinement should have been April of 2021 rather than March 3, 2022

## The First Step Act Requires that the BOP Credit Prisoners for Programming That Was Successfully Completed On or After December 21, 2018

32.        The BOP may argue that I am disqualified from receiving Earned Time Credit for the "educational, vocational, religious, jobs and health-related programs" that I completed before January 15, 2020. That potential argument is directly contradicted by the plain language of the First Step Act and the recent ruling of a district court See *Hare v Ortiz. No. CR 18-588-1* (RMB), 2 021 WL 391280 (D.N.J. Feb. 4 2021). Additionally on September 1, 2021 in *O'Bryan v J.W.Cox, CIV 21-4052 WL 3932275 (D.S.D.)* the court found that Petitioner was entitled to immediate application of the entirety of his Earned Time Credits in accordance with the FSA. In that matter, just as in this matter, The BOP claimed that it is not required to award any prisoner time credits from FSA until January 15, 2022. The Federal Court soundly rejected that argument, emphasizing that in accordance with the stated intent of Congress, "The BOP is supposed to now get on with applying the FSA to prisoners, with the short-timers to get preference in the phase-in of FSA." (citing USC 3621(h)(3). The court noted that other courts, in finding a lack of subject matter jurisdiction, have relied on the permissive "may" used in 18 USC 3621(h)(4), but in doing so they have not accounted for the interplay between two sections of the FSA. As the court explained, 18 USC 3621(d)(4) exclusively bars credit for programs completed **before** December 21, 2018, but the "may" language within 18 USC 3621(h)(4) permitted expansion of existing programs, and the BOP "may" permissively credit inmates for participation in these expanded activities. The Court held: "18 USC 3621(h)(4) should not and cannot read by it's "may" language to be broadly applied to say that the BOP has discretion to

/ 0

not allow Earned Time Credits either accrued after enactment (Dec. 21,2018) of FSA to January 15,2022 or at any time after that." "No deference is to be accorded to the BOP position that it need do nothing with accrued Earned Time Credits under the FSA until January 15, 2022."

33.     Under 18 USC 3632(d)(4)(B), prisoners are entitled to earn time credits for EBRRs that they "successfully completed on or after the date of enactment of this subchapter." Id. The date of enactment of the relevant subchapter was December 21, 2018. Id see Hare, 2021 WL 391280, at *6; Pet. Paragraph 29. It is indisputable that I completed all of the programs for which I seek Earned Time Credits on or after that date. It is also indisputable that I was eligible for such credits. Accordingly, I have a legal right to receive Earned Time Credit for each and every such program, job, PA or faith-based program.

34.     That is exactly what the Hare Court held. In that habeas corpus case, the BOP argued that the Court should "interpret the date of enactment of this subchapter" in 3632(d)(4)(B)(i) to mean January 15, 2020" Hare, 2021 WL 391280, at *6 se 85 Fed. Reg. 75268-01 (to be codified at 28 C.F.R. 523.42(d)(l). The Court made short work of that argument, noting the "ordinary meaning of the term" clearly indicated December 21, 2018, and the BOP used that as the date of enactment when calculating other dates within the Act. Id. *6-7. It concluded that "there is no ambiguity here. As a result, if Petitioner successfully completed an EBRR program, PA or faith based program on or after December 21, 2018, he is entitled to earn Time Credits" Id. At *7 . Similarly, in Goodman v Ortiz, the court credited petitioner with Earned Time Credit for programming dated from November 6, 2019. Id. No. CV 20-7582 (RMB), 2020 WL 5015613, at *6 (D.N.J. Aug 25, 2020); see id. ECF No. 1-2 at paragraph 4.3 (seeking Earned Time Credit for activities that petitioner participated in since November 6, 2019) The Court should require the BOP to adhere to the plain language of the First Step Act and credit me with 229 days of Earned Time Credit that I earned for taking these BOP-approved and provided educational, vocational, UNICOR, health-related and faith-based programs and the 169 days of Earned Time Credit that I Earned while on CARES Act home confinement.

*/ /*

## The Act's Plain Language Entitles Qualifying Prisoners to RECEIVE Credit Beginning January 15, 2020, Not January 15,2022

35.      Section 3621(h)(l) states that on January 15, 2020, 180 days after the Attorney General completed and released the System, the BOP was to "implement and complete an initial risk and needs assessment for each prisoner" and "begin to assign prisoners to appropriate [Programs]." 18 U.S.C. § 3621(h)(l)(A). The BOP also was required to "begin to expand the effective [Programs] and productive activities it offers and add any new [Programs] and productive activities necessary to effectively implement the [System]." 18 U.S.C. § 3621(h)(l)(B). Finally, the BOP was also to "begin to implement the other risk and needs assessment tools necessary to effectively implement the System over time, **while prisoners are participating in and completing the effective Programs and productive activities."** 18 U.S.C. § 362l(h)(l)(C) and "all" prisoners, 18 U.S.C. § 3621(h)(2)(A), certain prisoners, such as Me, already have been permitted and indeed are expected to "participate in and complete Programs and productive activities." 18 U.S.C. § 3621(h)(2)(B). There is no dispute that this is exactly what I did, in full compliance with the Act. The plain language of the statute expressly and unambiguously expects prisoners to participate in Programs and activities and to accumulate credits as a result.

These requirements all align with the plain language of the phase-in provision, which immediately follows this language and which requires that Programming actively commence on January 15, 2020 and gradually expand to apply to "**all**" prisoners by the end of the phase-in period on January,15, 2022. **The 2022 date is thus not the date on which the Programming "takes effect," rather, it is the end date by which the BOP must have expanded Programming To cover ALL inmates.** Section3621(h)(2) then plainly states that the two year "phase-in" period is the outer limit on when BOP must make Programming and the resulting credits available to "**all**" prisoners. 18 U.S.C. § 362l(h)(2). The section is clear that while the phase-in period is to be used to make the program available for "every" and "all" prisoners 18USC 3621(h)(2)(A), certain prisoners, such as Me, already have been permitted and indeed are expected to

/ 2

participate in Programs, Productive activities and jobs." 18 USC 3621(h)(2)(B). There is no

dispute that this is exactly what I did, in full compliance with the ACT.  The plain language of the

statute expressly and unambiguously expects prisoners to participate in Programs and activities

and to accumulate credits as a result. **The statute's requirement that the BOP extend the**

**program by January 15, 2022 to cover ALL prisoners is to police the BOP's compliance, not to**

**disincentivize participants**. Respondent may claim that the phase-in means that the provision

"has not yet taken effect" is contrary to the statute's unambiguous language and should be

rejected. **Not to mention Congressional intent which is on the record, with statements from**

**the authors and sponsors of the FSA.**

---

(2) Phase-in.--In order to carry out paragraph (1), so that *every* prisoner has the opportunity to

participate in and complete the type and amount of [Programs] or productive activities they

need, and be reassessed for recidivism risk as necessary to effectively implement the System,

the [BOP] shall—

(A) provide such [Programs] and productive activities *for all prisoners* before the date that is 2

years after the date on which the [BOP] completes a risk and needs assessment for each

prisoner under paragraph (I)(A); and

(B) develop and validate the risk and needs assessment tool to be used in the reassessments of

risk of recidivism, *while prisoners are participating in and completing [Programs}*

*and productive activities*. (emphasis added).

---

36.        More fundamentally, as set forth in my Petition, I have spent 459 days participating

In evidence-based recidivism programming("EBRR"), prison jobs, Productive Activities ("PA"),

classes and faith-based programming. All of these have been encouraged, recommended and

discussed with my Case Manager, Ms. Mitchell on multiple occasions, that included "team"

*13*

meetings and scheduled meetings with Ms. Mitchell. Some of these programs and classes I

signed up for and then the BOP determined what prisoners would be selected to participate

and what prisoners would not be selected. All of these were completed on or after the

enactment of the First Step Act on December 21, 2018. Under the First Step Act my successful

participation in the activities qualified me for the 229 days of Earned Time Credit. The 169 days

of Earned Time Credit for my job program at Bacon Products was reviewed and approved by

my Case Manager and the Jobs coordinator at the Chattanooga Halfway House.

If the BOP argues that those efforts only advanced me a shorter period, the BOP's calculation is

Flatly wrong under the law.

37.        If the BOP purports to cap the maximum amount of time awarded for successful

completion of various programs, this cap would not be based in the statute or even in the

proposed regulations. It would simply be made up by the BOP, and it is antithetical to the First

Step Act in letter and spirit. If the BOP attempted this, it would have a drastic effect on my and,

indeed, scores of similarly situated prisoners, as it would limit Earned Time Credits we have

earned for programs like UNICOR and the Threshold program, despite the long-term

commitment that each of these immersive programs require and the long-term skills that each

confer. In my case where I participated in a full-time seven and one-half month program I

should be awarded full credit for that successful participation.

38.        If the BOP arrives at some heavily discounted number by refusing to apply the plain

language of the First Step Act; and instead relies on interpretations of the statute that are

starkly inconsistent with it, and use draft regulations that have not been enacted, the BOP is

again, wrong under the law. Especially if these interpretations and draft regulations employ a

number of devices-none of which are contemplated by the Act-that would drastically reduce

the amount of credit that prisoners like myself can earn to reduce our time in prison.

39.        If the BOP is contemplating their "own" definition of what a "day" of programming

is, the BOP is again not following the First Step ACT in law, spirit or the "on the record"

Congressional intent . The BOP's "proposed" EBRR Manual is

flawed as it does not include ACE classes, jobs that teach inmates skills, restricts

freedom of religion and limits the amount of programming days an inmate can earn. As an

example, if an inmate who works in UNICOR and meets his Earned Time Credit early in his time

on the job, what incentive would he have to continue this intensive and time-consuming

program? This is clearly what Congress has been admonishing the BOP about during hearings

where the Director of the BOP testifies, like in the April 15, 2021 hearing in the Senate Judiciary

Committee. Also, and even clearer, in the May 5, 2021 letter and directive from Senators

Grassley and Durbin (who were the **authors** and **sponsors** of the FSA) said "While not

statutorily defined, the plain meaning of a day of participation is every calendar day during

which a person successfully participates in an EBRR, Productive Activity or job, with the length

of participation determined by the program….". This is a direct quote, on the record, from the

men who wrote this law. It cant get any clearer.

40.        Consistently with my claims, Senators Durbin and Grassley in this same letter and

directive to The Attorney General, a letter that is public record, states "The BOP "*proposed*"

rule allows credits to be earned only for programs that were *assigned* and completed after

January 15, 2020, more than two years after the FSA's date of enactment. The FSA **does not**

**Require** BOP to limit time credits to completion of *assigned* programming. BOP's inclusion of

this limitation in the "*proposed*" rule is particularly troublesome because the BOP has not

developed an effective needs assessment, as required by the FSA. Under the "*proposed*" rule,

Inmates would not be rewarded for self-identifying needs and voluntarily participating in

programming. The "*proposed*" rule also, **without authority or explanation**, prohibits credits

for programs completed before January 15, 2020, when the FSA allows credits based on **all**

programming completed after the statute's enactment on December 21, 2018." This is straight

from "the horse's mouth", so to speak as these distinguished Senators are the authors of the

FSA. Basically, there is no argument.

41.        Under the application of the Act, makes transfer to Probation and Supervised Release

the Highest application of earned time credits. This application is my due process protected

*15*

liberty interest in rights granted by the federal law evidenced by the Act. In addition, 3632(d) the incentives described in this Subsection shall be in addition to any other rewards or incentives for which a prisoner may be eligible. (i.e. CARES Act and Elderly Offender status)

42.       § 3621(h)(4) makes no mention of January 15,2022. It does not even infer that time credits earned after enactment cannot or need not be credited before January 15, 2022. Instead, no exception to allowing time credits under the FSA is made to the mandates in 3632(d)(4)(A) and § 3632(d)(4)(C) other than the prohibition in § 3632(d)(4)(B) to allowing time Credits for programs completed **before** enactment.

43.       18 U.S.C. § 3632(d)(4)(A) provides: "A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:" (emphasis added). Subparagraph (D) contains an extensive list of offenses which disqualify offenders from time credits. Roughly half of the BOP population is ineligible for time credits because of their offense of conviction.

44.        In addition, 18 U.S.C. § 3632(d)(4)(C) provides: Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release (emphasis added).

45.       Mandatory words such as "shall" impose a duty and permissive words, such as "may" grant discretion, the mandatory/permissive canon of statutory construction. Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 112 (2012). In considering whether an agency's interpretation of a statute gets deference under *Chevron*,

46.       U.S.A., Inc. V. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984), the court is guided by: Where a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, applying the ordinary tools of statutory construction, the court must determine whether Congress has directly spoken to the precise question at issue. **If**

/ 6

**the intent of Congress is clear, that is the end of the matter**; for the court, as well as the agency, **must give effect to the unambiguously expressed intent of Congress**.

47.    In this case, Congress has clearly spoken to this matter. The May 5, 2021 on the record letter and directive from Congress to the Attorney General. In addition, as attached to this Motion is a similar, detailed letter from Senators Sheldon Whitehouse and John Cornyn to the Office of General Counsel of the BOP. Who confirm that FSA and Congressional intent back-up my interpretation of date of enactment, definition of a "day", Effective Date, Earning of Time Credits while on Home Confinement and awarding of Time Credits now. Also attached is a letter from US Congressman Hakeem Jeffries to BOP Director Carvajal. In The Congressman's letter he also makes clear that Congress intended for date of enactment to be date that inmates can begin earning Time Credits, that inmates on Home Confinement should be awarded Time Credits and that Congress intended for the definition of a "day" of programming is as he said " A day of successful participation is clearly a day in which a prisoner has successfully participated in a program or productive activity. "

48.    It is clear, without a shadow of doubt what Congress **intent** is on FSA Earned Time Credits. Under the *Chevron, U.S.A., Inc. V. Nat. Res. Def. Council, Inc., 467 U.S. 837 ruling* " If the intent of Congress is clear, that is the end of the matter: for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." On April 15, 2021 members of the Senate Judiciary Committee reiterated this intent to BOP Director Michael Carvajal during oversight hearing. The Committee's chairman also expressly criticized the BOP's proposed regulations for failing to comply with this intent. He (The Chairman) was correct, and the BOP's positions merit no deference. As Senator Grassley noted during the April 15, 2021 hearing, in addressing the failure of the BOP to award the Earned Time Credits, "the pandemic hijacked many of the implementation efforts, but the BOP must do better and follow the **law** without excuse."

49.    In the FSA, Congress used mandatory words and permissive words. The **intent** of Congress was clear in each instance. Accordingly, no deference is to be accorded to the BOP

| 7

position that it need do nothing with accrued time credits under the FSA until January 15, 2022.

50.        Whereas here the **intent** of Congress is clear, there is no need to go to Chevron step two and among other things, consult legislative history. If the legislative history of the FSA were consulted, it would only confirm what Congress clearly expressed in the text of the FSA. See Goodman v. Ortiz, 2020 WL5015613 (D.N.J. 2020). (Also see O'Bryan v J.W. Cox 21-4052 SDS )
The BOP is supposed to now get on with
applying the FSA to prisoners, with the short-timers to get preference in the phase-in of the FSA. 18 U.S.C. § 3621(h)(3) "Priority during phase-in during the 2-year period described in paragraph (2)(A), the priority for such programs and activities shall be accorded based on a prisoner's proximity to release date." Not only are the short-timers such as myself to get priority for getting into the programs and activities, but if they successfully complete the programs or activities, they are entitled to the time credits earned. 18 U.S.C. § 3632(d)(4) provides:
 Time credits. (A) In general.—A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows: (emphasis ^ added).

51.        My eligibility was established and confirmed by Case Manager Ms. Mitchell's handwritten assessment determination, "FSA Eligible." WHEREFORE, as my qualification for and participation in FBOP programing and educational activities particularly designated and assigned me to obtain diminution credits by Case Manager Ms. Mitchell herself and calculated under the First State Act. named Immediate Custodian's herein refusal to calculate my credits, unlawfully restrains me of my personal federal civil right of liberty under the 14th and 15th Amendments due process and equal protection guarantee of the Federal Constitution for my Move to supervised release and out of Home Confinement, which should have been April of 2021, instead of my projected release date to supervised release of March 4, 2022.

*1 8*

## Exhaustion of Administrative Remedies

52.        The parties acknowledge that there is an administrative remedy exhaustion Requirement applicable to petitions for a writ of habeas corpus under 28 USC 2241. On August 18, 2021 I filed my BP-9 request to Michelle Fulgam in her capacity as "warden" of the Chattanooga Halfway House. On August 24, 2021 I received the attached memo of her denial and instruction to now file with the "Designations and Sentence Computation Center". Then on September 28, after wasting 16 days, Ms. Fulgam and Ms. Stacy Rimmer in her capacity as Central Sector Administrative Regional Manager said I now need to send my request to Ms. Rimmer. On September 30, 2021 Ms. Rimmer received my BP-10. 30 days later I filed my BP-11 with the office of General Counsel of the BOP. It was received and signed for by "D. Hill" on November 1, 2021. This completed my efforts for the required time frame of Administrative Remedy and should leave ZERO question that I exhausted my Administrative Remedy.

53.        18 USC 3632(d)(4)(C) ; 18 USC 3624(g) states that Earned Time Credits can be applied to pre-release custody or supervised release.

## Petition Is Ripe And Other Statements

54.        The BOP may argue that the Petition is not ripe because according to it's calculation, I'm not currently eligible for supervised release. This is incorrect as a matter of law. First, I was indeed eligible for accelerated release in April, 2021, as set forth in this Petition. But in any event, my Petition challenges the duration of my sentence and I seek a speedier release from prison to supervised release, an area that the Supreme Court has held lies at the "core of habeas corpus". Preiser v Rodriguez, 411 US 475,487 {1973}. My Petition is ripe and the Court may therefore proceed with the question of how much Earned Time Credit I have accrued.

55.        This is so because it challenges the duration of my confinement- an area that lies "within the core of habeas corpus", and one that courts have repeatedly found to be valid grounds for a petition. See Brown v Gov of New Jersey, 432 F. App'x 45, 46 {3rd Cir 2011}

19

(quoting Wilkinson v Dotson, 544 US 74, 79 (2005) and Preiser, 411 US at 487). "It is well established that habeas corpus is the exclusive avenue by which a person in custody may challenge the fact or duration of a conviction or sentence." Abdel-Whab v United States. 175 F. App'x 528 (3rd Cir 2006) Such a claim is ripe and remains exclusively the subject of a habeas petition when a prisoner "seeks immediate or speedier release" Heck v Humphrey, 512 US 477, 481 (1944); see Preiser, 411 US at 498 (claim that seeks "immediate or a speedier release" from confinement is "the heart of habeas corpus").

56.     Preiser directly addresses the issue of ripeness in the context of the accumulation and calculation of time credits. In Preiser, the Supreme Court addressed a case in which prisoners "alleged that the deprivation of their good conduct-time credits was causing or would cause them to be in illegal physical confinement, i.e., that once their conditional-release date had passed, any further detention of them in prison was unlawful". Id, at 487. The Supreme Court noted that although these particular prisoners would have gained "immediate release" habeas corpus "would have been their appropriate remedy" even if requested release only served to shorten the length of their actual confinement in prison." Id. The Supreme Court explained that "recent cases have established that habeas corpus relief is not limited to immediate release from illegal custody, but that the writ is available as well to attack future confinement and obtain future releases" Id. (citing cases). The Supreme Court concluded: "So, even if restoration of respondents' good-time credits had merely Shortened the length of their confinement, rather than required Immediate discharge from that confinement, their suits would still Have been within the core of habeas corpus in attacking the very Duration of their physical confinement itself. "It is beyond doubt Then, that the respondents could have sought and obtained fully Effective relief through federal habeas corpus proceedings." It is undisputed that my Petition challenges the duration of my confinement. Whether I have a legal right to "immediate" or "speedier" release is of no consequence Either way. My Petition is ripe.

## Precedent to Awarding FSA Earned Time Credits

57.     Goodman v. Ortiz (1:20-cv-07582) On August 25, 2020 United States District

Judge Renee Marie Bumb

"III. CONCLUSION The BOP's position that a prisoner can complete the PATTERN program before January 15, 2022 with no benefit to the prisoner is contrary to the statutory language, not to mention the unfairness of such a result. Therefore, the Court concludes that Petitioner is entitled to habeas relief. The Court will direct the BOP to immediately apply Petitioner's Earned Time credit of 120 days in an accompanying Order." The entire Order and opinion can be read At www.courtlistener.com/recap/gov.uscourts.njd.437697 /gov.uscourts.nid. 437697.12.0.pdf

58.     _O'Bryan v Cox_, CIV 21-4052 On September 1, 2021 Federal Judge Lawrence L. Piersol, United States District Judge

"Petitioner is entitled to receive all of his 43.75 days of credit to move back his current February 23, 2022 release date; Whether those time credits are applied for pre-release custody or transfer to supervised release is by statute within the discretion of the Bureau of Prisons. 18 U.S.C. § 3632(d)(4)(C); 18 U.S.C. § 3624(g)."  The entire order can be read at

https://ecf.sdd.uscourts.gov/doc1/16513557527

59.     _Bains v Quay_ 3:21-cv-00353   On October 27, 2021 United States Magistrate Judge Joseph Saporito, Jr.

"Accordingly, Bains has at this time accrued sufficient hours of successful EBRR/PA participation to earn four 15-day awards of FSA time credits, for a total of 60 days of FSA time credits. Thus, under the FSA, Bains is entitled to immediate, mandatory placement in prerelease custody no earlier than March 27, 2022.29 See 18 U.S.C. § 3632(d)(4)(C); id. § 3624(g)(2) id. § 3624(g)(1)(D)(i)(I)."   The entire order can be read

https://ecf.pamd.uscourts.gov/doc1/15517847333

## CONCLUSION

60.       I respectfully ask the Court to expediate this Motion. As this Court knows I previously filed this similar Motion in May of this year. As well, as my reply to the BOP's position. My Motion was denied based on the filing of the 3rd step in my administrative remedy being filed a few days too early. Therefore, I have had to take an additional 109 days to go

21

through that process again. In fact, when I filed my BP-10 with Ms. Rimmer on September 30, 2021, I talked to her on the phone October 1, 2021 and she told me that even though she was going to deny my request, she was NOT going to respond back to me until the full 30 days expired. When I asked her why she would take that long she responded "Because I can". At the end of 30 days she was still late on getting me a response. The BOP is doing everything they can to delay my right to speedy due process. At every step the BOP has not only denied my Earned Time Credits, but as far as I can tell has even refused to even **calculate** my Earned Time Credits

61.         Considering the BOP has already answered my similar Motion, I respectfully ask this Court to limit the number of days they have to respond. Especially considering that with My Earned Time Credits I should have already been moved to supervised release from home Confinement and in all likelihood the BOP response will be exactly the same as last time.

62.         I, and many other inmates like myself have been diligent when the FSA was enacted on December 21, 2018 (almost 3 years running). Many of us were specifically told by Case Managers, Counselors and other administrators at Federal Prisons all over the country that when we participate in classes, programs, productive activities and jobs both in prison and while on home confinement we would receive Earned Time Credits. Congress allocated and gave the BOP $180,000,000 to implement the FSA from 2018-2021. For the BOP to try and say that they have no obligation to award these Earned Time Credits despite Congress admonishing the BOP with on the record letters, directives and in Senate hearings is hard to fathom. Inmates like myself took these classes, programs and jobs on a voluntary basis not only knowing and hoping it would help us in the future after we have paid our debt to society, but also to receive the EARNED Time Credits we were promised as Congress and the law of the First Step Act mandated.

63.         It is abundantly clear and proven by the on the record letters and directives that the Congressional intent of the FSA was immediate time reduction credit relief for qualifying inmates. 18 USC 3621(h)(4)(6)(2019) Pursuant to the Act, the BOP was Congressionally mandated to utilize Earned Time Credit incentive programs, activities and jobs, immediately on

22

or after December 21, 2018, using previously existing recidivism reduction programs, productive activities and jobs already in use by individual facilities, during the preliminary phase in, or expansion period. *Id.* Thereafter, the BOP was mandated to expand them, in conjunction with *later* approved and vetted recidivism reduction programs, productive activities and jobs published by the Office of the Attorney General, e.g. the "System". During later stages of the phase in period, all on or before July 19, 2019, and for continued implementation by the BOP of approved and vetted programs, activities and jobs, on or before January 15, 2020. Id. See also 18 USC 3632(a)(2019).

64.        Your honor, I am not a lawyer, but I did take civics 45 years ago in school. From what I Remember, Congress creates a bill. In this case the authors and sponsors of that bill have gone on record on the proper interpretation. A bill then goes to Committee, then a Floor Action, A vote, Conference Committees, bill is then passed by both houses of Congress, then the President signs into law. The Office of Federal Register assigns it a number.

65.        This Motion boils down to a Federal "Agency", the BOP, who has decided to take their own interpretation and tell the Senators who authored and passed this law that the Senators are wrong and the BOP's interpretation is right? I just don't remember that in my civics class. Especially when the landmark Chevron case tells us that when the intent and interpretation of Congress is clear (as in this case) **that is the end of the matter**.

66.        On November 16, 2021 a few weeks ago, in his speech on the Senate floor, US Senate Majority Whip Dick Durbin (D-IL), also one of the authors of the FSA explained how "BOP Director Carval has failed to resolve chronic staffing shortages at BOP, has failed to contain outbreaks of Covid AND **has failed to fully implement the bipartisan FIRST STEP ACT…..**"

67.        On November 16, 2021 Department of Justice Inspector General Michael Horowitz released a report that found that the BOP failed to incentivize or reward inmates who completed First Step-related programs. The report stated that up to 60,000 inmates were affected. Horowitz said, "We are concerned that the delay in applying Earned Time Credits may negatively affect inmates who have

2 3

earned a **reduction in their sentence** or **an earlier placement in the community**. "
The BOP response was stunning in their comprehension, blaming this illegal delay on
National Union negotiations. The BOP told the inspector general the credits for
inmates weren't applied because they "must be negotiated with the national
union because it would create changes to conditions of employment, including
determinations and application of Earned Time Credits for inmates, for Unit Team
staff working in BOP institutions who are bargaining unit employees". Again, your
honor I also must have missed the civics class where they explained that Congress
must wait for a union's permission to implement a law. So, the BOP is telling us
that Congress can introduce a bill, vote it into law, have the President of the
United States sign it but it really doesn't matter until a federal employees Union
says it's OK?

68.         Your Honor, Senators Durbin, Grassley, Whitehouse, Booker, Cornyn, 20
distinguished members of the Senate Judiciary Committee, Representative Jefferies, Judges
Renee Bumb, Joseph Saporito and Lawerence Piersol have sent a message to Government
Agencies like the BOP. Their Message is clear and plain. The BOP cannot hide behind the parsing
of words like "may", "shall" and "in our discretion" or wait until a Union gives them permission,
to circumvent the intent, spirit (much less the application of a **law**) and the **on
the record** interpretation, by the authors and Congressional sponsors of The First Step Act on
awarding of Earned Time Credits.

69.         I come before this Court requesting that the Earned Time Credits that I, as well as
60,000 other inmates took the time and effort to complete be granted, as Congressional
leaders who authored the FSA expected. We were all promised, encouraged and directed by
Case Managers, Counselors, Assistant Wardens and Wardens on multiple occasions. Now that
Congress has gone ON THE RECORD that the BOP is unlawfully denying us these Earned Time
Credits, its time to make this right. For the BOP to use the excuse that they have to get their
Union's permission is staggering in its arrogance. The BOP's position to completely ignore

24

Congress should be a shock to this Court. I should have been moved to Supervised Release many months ago. Its not going to make that much difference for me as my date to be moved to Supervised Release is in March of 2022, however I hope that my Motion can help thousands of other inmates who have been lied to and unlawfully denied what Congress expected, demanded and voted for us to receive. This Motion is about more than Me.

70.        For the foregoing reasons, I respectfully request that this Court grant my Petition, issue a *writ of habeas corpus* and order my immediate transfer from home confinement to supervised release.

DECEMBER 1, 2021                         Respectfully Submitted,

                                         Douglas A. Dyer

                                         179 Callaway Court

                                         Chattanooga, Tn 37421

                                         423-661-1729

                                         Dougdyer11@gmail.com

25

# EXHIBIT A

RICHARD J. DURBIN, ILLINOIS, CHAIR

PATRICK J. LEAHY, VERMONT
DIANNE FEINSTEIN, CALIFORNIA
SHELDON WHITEHOUSE, RHODE ISLAND
AMY KLOBUCHAR, MINNESOTA
CHRISTOPHER A. COONS, DELAWARE
RICHARD BLUMENTHAL, CONNECTICUT
MAZIE K. HIRONO, HAWAII
CORY A. BOOKER, NEW JERSEY
ALEX PADILLA, CALIFORNIA
JON OSSOFF, GEORGIA

CHARLES E. GRASSLEY, IOWA
LINDSEY O. GRAHAM, SOUTH CAROLINA
JOHN CORNYN, TEXAS
MICHAEL S. LEE, UTAH
TED CRUZ, TEXAS
BEN SASSE, NEBRASKA
JOSHUA D. HAWLEY, MISSOURI
TOM COTTON, ARKANSAS
JOHN KENNEDY, LOUISIANA
THOM TILLIS, NORTH CAROLINA
MARSHA BLACKBURN, TENNESSEE

**United States Senate**

COMMITTEE ON THE JUDICIARY

WASHINGTON, DC 20510–6275

May 5, 2021

The Honorable Merrick Garland
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Dear Attorney General Garland:

We respectfully request that you direct the Bureau of Prisons (BOP) to expeditiously revise the proposed rule published on November 25, 2020, regarding earned time credits authorized by the First Step Act of 2018 (FSA). As proposed, the rule severely limits the incentive structure designed to increase program participation and would undercut the effectiveness of the FSA. We ask that you reevaluate and amend the rule consistent with the statute's goals of incentivizing and increasing program participation to reduce recidivism.

The proposed rule undermines the FSA's incentive structure in several respects. First, by defining a day as eight hours of programming the rule greatly restricts the ability to earn credits. Under the FSA, eligible inmates "shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming [EBRR] or productive activities [PAs]." While not statutorily defined, the plain meaning of a day of participation is every calendar day during which a person successfully participates in an EBRR or PA, with the length of participation determined by the program. Instead, the proposed rule defines a day as "one eight-hour period" of a completed EBRR or PA. Using this definition, an inmate who participates in a program one hour a day for eight days would earn just one "day" of participation under the FSA. Given the limited programs offered and the duration and frequency of programs, earning enough time credits to meaningfully reduce prison time would be nearly impossible under this definition.

Second, the proposed rule allows credits to be earned only for programs that were assigned and completed after January 15, 2020, more than two years after the FSA's date of enactment. The FSA does not require BOP to limit earned time credits to completion of *assigned* programming. BOP's inclusion of this limitation in the proposed rule is particularly troublesome because BOP has not developed an effective needs assessment, as required by the FSA. Under the proposed rule, inmates would not be rewarded for self-identifying needs and voluntarily participating in programming. The proposed rule also, without authority or explanation, prohibits credits for programs completed before January 15, 2020, when the FSA allows for credits based on all programming completed after the statute's enactment on December 21, 2018.

Third, the FSA directs that all eligible federal prisoners in BOP custody shall earn credits for program participation, but the proposed rule would exclude prisoners in residential reentry centers (RRCs) or home detention. Because prisoners in RRCs and home detention are in BOP custody, the rule is contrary to the FSA. In fact, the FSA specifically anticipated that prisoners on home detention would continue to participate in programming by listing program participation as one of a few authorized reasons prisoners may leave home while on detention.

Finally, we are concerned that the proposed rule's penalties are unduly harsh. The rule proposes that inmates may lose earned time credits "for violations of prison rules, or requirements and/or rules of an [EBRR or PA]," applying the same procedures used for loss of good time credits. Especially when combined with the time required to earn credits under the proposed rule, the penalty for violations would be too severe. For example, one unexcused absence from a work assignment could result in the loss of 30 days of earned credits, although earning those credits would require completing 720 hours of programming. The rule also imposes penalties for violations of program requirements, rather than just violations of "prison rules or [EBRR or PA] rules," as the FSA requires, suggesting that failure to fulfill the requirements of a program not only could result not only in a failure to earn time credits for participation, but also the loss of credits previously earned.

While losing hard-earned credits would be easy, the rule makes restoring credits too difficult. The FSA simply requires "a procedure to restore time credits that a prisoner lost as a result of a rule violation, based on the prisoner's individual progress." However, the proposed rule would only allow for restoration after "clear conduct for at least four consecutive risk and needs assessments." These assessments may only be completed annually, so it could take a prisoner at least four years to restore lost credits, longer than the average sentence.

For these reasons, we ask that you direct BOP to expeditiously revise the proposed rule consistent with the comments above. Establishing robust programming and a fair system to earn time credits is critical to meeting the FSA's goal of reducing recidivism.

Thank you for your time and consideration. We look forward to your prompt response.

Sincerely,

Richard J. Durbin
Chair
U.S. Senate Committee on the Judiciary

Charles E. Grassley
Ranking Member
U.S. Senate Committee on the Judiciary

# DOJ finds Bureau of Prisons failed to apply earned time credits to 60,000 inmates

*The inspector general fears inmates could have received sentence reductions.*

By **Luke Barr**
November 17, 2021, 1:50 PM • 6 min read



3:18

On Location: November 18, 2021

*Catch up on the developing stories making headlines.*
Bill Clark/CQ-Roll Call via Getty Images

Sixty-thousand inmates potentially did not properly receive credits for time served under the First Step Act's recidivism programs, the Department of Justice inspector general found.

"We are concerned that the delay in applying earned time credits may negatively affect inmates who have earned a reduction in their sentence or an earlier placement in the community," Department of Justice Inspector General Michael Horowitz wrote in the report released Tuesday.

The inspector general also found that the Bureau of Prisons (BOP) failed to incentivize or reward inmates who completed First Step-related programs.

After the implementation of the sweeping First Step Act, a recidivism program was put into place with time-served credit for inmates who completed it.

The BOP told the inspector general the credits weren't applied because they "must be negotiated with the national union because it would create changes to conditions of employment, including determinations and application of earned time credits for inmates, for Unit Team staff working in BOP institutions who are bargaining unit employees," according to the report.

The DOJ report noted that a lack of in-person negotiations with BOP union members slowed the implementation of the act and inspector general recommendations. BOP union negotiations weren't taking place due to the COVID-19 pandemic, despite BOP staff going into federal prisons across the country.

The Bureau of Prisons union has not responded to ABC News' request for comment.

"BOP disagrees with OIG's characterization of the agency's delayed implementation of FSA requirements," the Bureau of Prisons wrote in a written response attached to the report. "Although the COVID- 19 pandemic has created unprecedented challenges for the federal government, BOP has taken significant steps in implementing the FSA's requirements, consistent with the FSA's phased approach, and has complied with all mandatory statutory guidelines to-date."

On Tuesday, Senate Judiciary Chairman Dick Durbin called for Attorney General Merrick Garland to dismiss BOP Director Michael Carvajal after The

Associated Press released a report detailing an amalgamation of federal charges against BOP employees.

"Director Carvajal was handpicked by former Attorney General Bill Barr and has overseen a series of mounting crises, including failing to protect BOP staff and inmates from the COVID-19 pandemic, failing to address chronic understaffing, failing to implement the landmark First Step Act and more," Durbin said. "It is past time for Attorney General Garland to replace Director Carvajal with a reform-minded director who is not a product of the BOP bureaucracy."

The Bureau of Prisons has been under scrutiny for more than half a decade for a multitude of issues.

Following the suicide of Jeffery Epstein at the Metropolitan Correctional Center, there were calls to revamp BOP totally, and former Attorney General Barr brought in former Director Kathleen Hawk Sawyer to run the agency. After she left, Caravajal took over.

# EXHIBIT B

January 25, 2021

ATTN: Sarah Qureshi
Rules Unit
Office of General Counsel
Federal Bureau of Prisons
320 First Street NW
Washington, DC 20534

RE: RIN 1120–AB76, "FSA Time Credits"

To Whom It May Concern,

The First Step Act was a landmark, bipartisan effort to reform the federal prison system in order to reduce crime, lower prison costs, and ensure that people can successfully reenter society after their incarceration. As two of the original sponsors of the First Step Act—as well as its predecessor, the Recidivism Reduction and Public Safety Act[1]—we believe the Federal Bureau of Prisons' (BOP) proposed rule[2] falls short of that goal. We request that BOP substantially revise the new rule before it is finalized.

The linchpin of the First Step Act is a new policy that encourages incarcerated individuals to participate in evidence-based recidivism reduction programs (EBBRs) or productive activities (PAs) by allowing them to earn time credits towards their release.[3] BOP accurately describes the earned time credit program as "Incentives for Success."[4] The intent of the policy was to "give people the opportunity, those who have the will and the determination to take advantage of the opportunity to turn their lives around, to deal with their addiction, to deal with their lack of skills and education."[5] Then-Attorney General William Barr similarly acknowledged that "what Congress intended with this bipartisan bill" was to create "greater incentive to participate in

---

[1] Recidivism Reduction and Public Safety Act of 2014, S. 1675 (113th Cong.).

[2] FSA Time Credits, 85 Fed. Reg. 75268 (proposed Nov. 25, 2020) (hereinafter "Proposed Rule").

[3] First Step Act of 2018, Pub. L. 115–391, § 101 (Dec. 21, 2018), 132 Stat. 5194, 5198 (hereinafter "First Step Act"). Ineligible individuals can earn other benefits, as prescribed by BOP.

[4] Federal Bureau of Prisons, An Overview of the First Step Act, https://www.bop.gov/inmates/fsa/overview.jsp#:~:text=Incentives%20for%20Success,year%20of%20their%20sentenced%20served.&text=Eligible%20inmates%20can%20earn%20time%20credits%20towards%20pre%2Drelease%20custody (last visited Dec. 18, 2020).

[5] Floor Remarks, Sen. John Cornyn, May 9, 2018, https://www.congress.gov/congressional-record/2018/05/09/senate-section/article/S2565-2.

evidence-based programs that prepare them for productive lives after incarceration."[6]  In doing so, we believed the Act would also reduce both prison costs and recidivism rates for incarcerated individuals.

Unfortunately, the proposed rule makes it harder than Congress intended for incarcerated individuals to earn time credits by: 1) unnecessarily delaying the date when individuals may begin earning time credits; 2) denying individuals the ability to earn time credits while in residential reentry centers (RRCs); and 3) restrictively defining when someone has participated in a "day" of programming for the purpose of earning time credits.[7]  In doing so, it reduces individuals' incentives to participate in EBRRs and PAs and limits the Act's ability to achieve its other goals.  BOP should revise these provisions before finalizing the proposed rule.  In making those revisions, BOP should also ensure that people are assigned to categories of programs that meet their needs, rather than specific programs, in order to ensure maximum access to credit-earning EBRRs.

<u>Effective Date</u>

The proposed rule fails to give individuals credit for programs they completed after the First Step Act became law on December 21, 2018.  The Act provides that "[a] prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed . . . prior to the date of enactment of this subchapter."[8]  "Enactment" is "the action or process of making into law,"[9] which occurred when the First Step Act was signed into law on December 21, 2018.  The proposed rule, however, states that an individual may only earn time credits for programs "successfully completed on or after January 15, 2020"[10]—more than a year after the date of enactment.  Nor does the proposed rule explain why individuals are not eligible to earn time credits for programs completed between December 21, 2018 and January 15, 2020.[11]  Allowing eligible individuals to earn time credits for all programs completed after December 21, 2018 is consistent with the text of the statute.  The rule as drafted is not.

---

[6] Press Release, Department of Justice Announces Enhancements to the Risk Assessment System and Updates on First Step Act Implementation, Jan. 15, 2020, https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act

[7] These provisions are the most glaring problems with the proposed rule. However, our failure to discuss other portions of the proposed rule does not indicate that we agree with those provisions.

[8] 18 U.S.C. 3632(d)(4)(B).

[9] "Enactment," Black's Law Dictionary (11th ed. 2019).

[10] Proposed Rule, at 75269.

[11] The Department of Justice has argued elsewhere that BOP is not required to assess each individual using the new risk and needs assessment until January 15, 2020, and that "BOP is not obligated to offer any programs until two years after the BOP completes" that assessment. *Llufrio v. Johns*, No. 5:19-cv-122 (S.D. Ga. Aug. 13, 2020), *available at* 2020 WL 5248556.  It is true that "implementation of the [risk and needs assessment] system and recommendations by [the] Bureau of Prisons" does not become effective until "the date that the Attorney General completes and releases the risk and needs assessment system."  First Step Act §102(b)(2).  However, that subsection (Section 102) defines only when time credits can be applied toward release, not how individuals may earn time credits (Section 101).  As noted above, Section 101 clearly states when individuals may begin earning time credits. 18 U.S.C. 3632(d)(4)(B).

<u>Time Credits in RRCs</u>

The proposed rule also provides that "FSA Time Credits can only be earned while an inmate is in a Bureau facility, and will not be earned if an inmate is in a Residential Reentry Center or on home confinement."[12] The proposed rule does not cite to any authority for this restriction, and this interpretation is not consistent with the goals of the First Step Act.

Allowing individuals to earn time credits while in RRCs is authorized by the First Step Act. The Act provides that "[t]ime credits earned . . . by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release."[13] It defines "prisoner" as "a person who has been sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or a person in the custody of the Bureau of Prisons."[14] Because "[p]re-release inmates at an RRC remain in Federal custody while serving a sentence imposed by a U.S. District Court or DC Superior Court,"[15] they are "prisoners" for the purposes of the First Step Act. Nor does the First Step Act distinguish between "prisoners" who are serving their sentence in a BOP institution, in an RRC, or on home confinement in describing the time credit program.[16] By its own terms, the statute allows BOP to award time credits to individuals incarcerated in an RRC toward time in supervised release.

Allowing individuals incarcerated in an RRC to earn time credits by participating in EBRRs would further the purposes of the First Step Act. RRCs offer substance abuse treatment[17] and other programs similar to those offered in BOP institutions. There is no reason to believe that a program offered in an RRC will reduce recidivism any less than one offered to an individual in prison. In fact, such programs may be more effective, as individuals are close to release from custody and can begin putting lessons learned into practice as they transition home. BOP should revise the proposed rule to allow individuals to earn time credits while in an RRC.

<u>Definition of a "Day"</u>

The proposed rule's definition of a "day" of program participation does not adequately reward engagement with EBBRs and PAs consistent with the First Step Act. The Independent Review

---

[12] Proposed Rule, at 75269.

[13] 18 U.S.C. § 3632(d)(4)(C).

[14] 18 U.S.C. § 3635(4).

[15] Federal Bureau of Prisons, Completing the transition. Reentry assistance reduces recidivism, https://www.bop.gov/about/facilities/residential_reentry_management_centers.jsp#:~:text=RRCs%20offer%20drug%20testing%20and,treatment%20by%20contracted%20treatment%20providers (last visited Jan. 6, 2020).

[16] *See* 18 U.S.C. § 3632(d)(4)(B) (stating that individuals may not earn time credits for programs completed before the statute's enactment date or before they are sentenced; 18 U.S.C. 3632(d)(4)(D) (defining "ineligible prisoners" based on charge, not place of incarceration).

[17] Federal Bureau of Prisons, Completing the transition. Reentry assistance reduces recidivism, https://www.bop.gov/about/facilities/residential_reentry_management_centers.jsp#:~:text=RRCs%20offer%20drug%20testing%20and,treatment%20by%20contracted%20treatment%20providers (last visited Jan. 6, 2020).

Committee (IRC) created by the First Step Act has expressed similar concerns about this definition.[18]

The First Step Act provides that individuals "shall earn 10 days of Time Credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities."[19] The proposed rule defines "[a] 'day' . . . as one eight hour-period of a successfully completed Evidence-Based Recidivism Reduction program or Productive Activity."[20] Because BOP programs do not run for eight hours per day, the proposed rule would require individuals to attend an EBRR or PA for several calendar days before they earned a full "day" of time credit.

It was not our intent as drafters of the legislation that BOP define a "day" in this way. Nor did Congress ever consider it.

As noted by the IRC, "[o]nly 14 of those 71 so-far-designated [EBRRs and productive activities] involve a sufficient number of programming hours, by themselves, for an inmate to reach the '30 days of participation' benchmark necessary to obtain 10 days of [earned time credits]. Many of these 14 . . . are currently available at only a few BOP facilities and/or serve a very small number of inmates."[21] As shown in the chart below, participants may successfully participate in some programs for months only to earn a day of time credit under the proposed rule.

| Program[22] | Length of Program | Time Credit Based on Eight Hour "Days" Participated |
|---|---|---|
| Non-Residential Substance Abuse Program | 3-6 months (24 hours) | 1 day |
| Basic Cognitive Skills | 12 weeks (24 hours) | 1 day |
| Resolve Program | 40 weeks (40 hours) | 1.67 days |

The time credits awarded by the proposed rule are paltry compared to the sanctions it creates. For example, a single Moderate Severity act—which can include offenses like "being unsanitary or untidy"—cause individuals to forfeit up to 30 days of FSA Time Credits,[23] wiping out months of program participation.

The proposed rule's narrow definition of a "day" does not adequately incentivize program participation and reduce recidivism as intended by the First Step Act. Coupled with lack of

---

[18] Report of the Independent Review Committee Report Pursuant to the Requirements of Title I Section 107(g) of the First Step Act (FSA) of 2018 (P.L. 115-391), at 5-6 (Dec. 21, 2020), *available at* https://firststepact-irc.org/wp-content/uploads/2020/12/IRC-FSA-Title-I-Section-107g-Report-12-21-20.pdf (hereinafter "IRC Report").
[19] 18 U.S.C. 3632(d)(4)(A)(i).
[20] Proposed Rule, at 75269.
[21] IRC Report at 5-6.
[22] *Id.*
[23] U.S. Dep't of Justice, Federal Bureau of Prisons, Policy No. 5270.09: Inmate Discipline Program (eff. Aug. 1, 2011), *available at* https://www.bop.gov/policy/progstat/5270_009.pdf.

access to the necessary EBRRs, some could interpret the rule as an indication that the system is unfair, which could increase their risk of recidivism.[24]

We recommend that BOP institute an alternative method of calculating First Step Act time credits in order to create a stronger, more effective, and more equitable incentive for completion of programming and productive activities, a core goal of the legislation. We also recommend that BOP increase the number of facilities at which existing high-intensity programs are currently available.

Program Assignments

As BOP finalizes and implements its proposed rule, it should ensure that individuals are assigned to categories of programs that meet their needs, rather than specific programs, to allow for maximum participation in credit-earning EBRRs and PAs.

In order to increase access to programs in prisons, the First Step Act included provisions allowing BOP to expand its partnerships with external organizations, including faith-based groups. The Act also directs that "participation in a faith-based program, treatment, or regimen may qualify a prisoner for earned time credit."[25] In doing so, Congress sought to recognize the value of job training, social, and family development programs offered by faith-based groups, and to increase the number of program offerings available to incarcerated individuals. In practice, a particular facility may offer two or more classes that meet particular needs, including faith-based options.

The proposed rule only allows incarcerated individuals to earn time credits following completion of an EBRR or PA "that is *assigned* to the inmate based on the inmate's risk and needs assessment [emphasis added]."[26] As BOP finalizes and implements this rule, we encourage the Bureau to assign individuals to categories of programs that meet their needs (i.e., cognitive-behavioral therapy, substance use, job training, etc.) rather than specific programs. Each program at a facility should be appropriately categorized, including faith-based programs. Such flexibility will ensure that individuals can freely choose to participate or not participate in faith-based options. It is also critical to allow for greater program access as BOP expands its offerings, as some programs have limited capacity or may not be offered at particular facilities.

Conclusion

As currently drafted, the proposed rule unnecessarily limits incarcerated individuals' ability to earn time credits, preventing the First Step Act from achieving its goals of reducing prison costs and incentivizing rehabilitation. These provisions are not mandated by the statute or its legislative history, and are contrary to the intent of Congress. In order to ensure that the First

---

[24] *See, e.g.,* Tom Tyler, Why People Obey the Law (2006).
[25] First Step Act § 106.
[26] Proposed Rule, at 75269, 75271-71.

Step Act can fulfill its promise of prison reform, BOP should revise these provisions before the rule is finalized.

Sincerely,

Sheldon Whitehouse
United States Senator

John Cornyn
United States Senator

# EXHIBIT C

Dear Director Carvajal:

I write to express serious concerns regarding the proposed rulemaking entitled FSA Time Credits published in the Federal Register on November 25, 2020. As a Member of Congress who is committed to the successful implementation of the First Step Act of 2018, I urge the Bureau of Prisons (BOP) to modify its proposed rule to ensure its policies and procedures relating to time credits are consistent with the statute and congressional intent.

The historic and bipartisan First Step Act contained numerous provisions aimed at reducing incarceration, improving conditions in prisons and providing access to recidivism reduction programsincluding education, vocational training and mental health counselingto better prepare participants to successfully reenter society upon their release. To incentivize participation in such programming and productive activities, the law allows individuals to earn time credits that can reduce the portion of their sentence that is served in prison. In addition to contributing to the laws effort to reduce the prison population, the ability of incarcerated individuals to earn these time credits is critical to achieving the First Step Acts goal of positioning newly released individuals for a second chance at successful reentry into their communities.

Unfortunately, since the laws enactment, BOP has failed in numerous ways to implement the First Step Act in a manner consistent with Congresss intent. For example, one provision corrected a BOP interpretation of 18 U.S.C. Section 3624(b) to ensure that incarcerated individuals can earn the full 54 days of good time credit for every year of their imposed sentence. This was referred to as the good time credit fix to make it abundantly clear that BOPs interpretation was inconsistent with Congresss intent when creating this program, a practice which continued even after the Bureau was notified of this miscalculation by lawmakers. Furthermore, after the laws enactment BOP again chose to interpret the good time credit fix in the most limited way possible, asserting that the provision was not effective immediately.

I was disappointed to see the pattern continue with the proposed rule on FSA Time Credits that BOP published in November. In my view, the following restrictions BOP is attempting to impose in this rule are arbitrary, harmful and contrary to the intent of the First Step Act:

1. FSA time credits may only be earned for evidence-based recidivism reduction programs and productive activities that are successfully completed on or after January 15, 2020.

This restriction serves no clear purpose and is inconsistent with the text of the First Step Act, which states that credit may not be earned for programs completed prior to the date of enactment of this subchapter, which was December 21, 2018.

2. FSA time credits can only be earned while an individual is in a Bureau facility and will not be earned if an individual is in a Residential Reentry Center or on home confinement.

I see no reason to make individuals in Residential Reentry Centers (RRCs) or in home confinement ineligible to earn time credits. Under the First Step Act, a prisonerdefined as a person who has been sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or a person in the custody of the Bureau of Prisons, which includes individuals in RRCs or on home confinementis eligible to earn time credits. Congress could have used a narrower definition or explicitly excluded certain categories of individuals based on where they serve their sentence, but it chose not to do so.

3. A day is a unit defined as one eight-hour-period of a successfully completed evidence-based recidivism reduction program or productive activity.

The First Step Act provides that A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities. For the purposes of this calculation, defining a day as eight hours of participation does not appear to be a good faith attempt to honor congressional intent. A day of successful participation is clearly a day on which a prisoner has successfully participated in a program or productive activity. BOPs definition of day would dramatically reduce the amount of time credits an individual can earn.

Though they are not the only problems with this proposed rule, these three limitations on the First Step Acts earned time credits would significantly weaken the laws ability to incentivize participation in recidivism reduction programs and productive activities. Therefore, I respectfully request that you modify this proposed rule to make it more

Case 1:21-cv-00299-CTCH· Document 1· Filed 12/29/21· Page 41 of 86· PageID 105

consistent with both the letter and spirit of the law.

Thank you for your time and attention.

Sincerely,

HAKEEM JEFFRIES
Member of Congress

# Administrative Remedy documents

The administrative remedy procedure for federal prisoners is provided at 28 C.F.R.§§ 542.10-.19. See United States v. Wilson, 503 U.S. 329, 335 (1992). Under this administrative procedure, if informal resolution fails, the inmate must pursue a three-level process within the prescribed time intervals. Typically, the inmate must formally appeal to the Warden, via a Request for Administrative Remedy, commonly referred to as a BP-9; then to the Regional Director, via a form commonly referred to as a BP-10; and finally, to the Office of General Counsel, via a BP-form commonly referred to as a BP-11. Administrative remedies have not been exhausted until the inmate's claim has been filed at all levels and has been denied or no response after 30 days at each and all levels.

Matter was discussed with Jeremy Clark, Case Manager at Chattanooga Halfway House on August 12, 2021, was told, by him he had no authority to award my Earned Time Credits.

I filed with Ms. Michelle Fulgam, as warden of the Chattanooga Halfway House via a BP-9 on August 18, 2021. Received the attached memo dated August 24, 2021 telling me to file with "Designations and Sentence Computation Center"

Then after wasting 3 weeks, was told by Ms. Fulgam to now file, instead with Ms. Stacy Rimmer, at North Central Region office of the BOP. I filed my BP-10 with Ms. Rimmer September 30,2021. After repeated calls and conversations with Ms. Rimmer, she told me I would have a response in 30 days, but not sooner. When I asked her why she would take the full 30 days, her response was "because I can" and then she abruptly hung up on me. As of November 30, 2021 I have received no response.

I then filed my request via a BP-11 with the General Counsel of the BOP on November 1, 2021 with no response as of December 1, 2021.

Therefore, I have exhausted my Administrative Remedies



**U.S. Department of Justice**

Federal Bureau of Prisons

---

*Nashville Residential Reentry Management*                    *Nashville, TN 37203*

August 24, 2021

FROM:                Michelle Fulgum, Acting Residential Reentry Manager

SUBJECT:             Administrative Remedy Appeal

MEMORANDUM FOR       Doug Dyer, Reg. No. 52293-074
                     179 Callaway Ct
                     Chattanooga, TN 37421

This is in response to your letter received August 18, 2021.

_____1.  Your appeal was answered on _____. If you have not received your copy by now, you may ask the institution Administrative Remedy Coordinator to provide you with a copy from the Warden's Administrative Remedy File.

_____2.  Your appeal was filed on _____ and a response is still in progress. If more than 30 days have elapsed since the filing date, you are entitled to consider your appeal denied. However, some cases cannot be decided within this time period. In that event, the time for response may be extended for an additional 30 days. Staff will provide you with a computer-generated notice of extension to inform you of the extension.

_____3.  Our records indicate that the appeal you reference has not been filed with this office.

_____4.  You have not provided sufficient information for us to respond to your inquiry. If your inquiry concerns an administrative remedy, please provide the case number, the date filed in this office or date mailed by you, your name and register number, and the subject of your administrative remedy. If you cannot provide all of this information, please provide as much as possible.

_____5.  A review of your inquiry reveals it contains issues you should first bring to the attention of institution staff. If you are unable to resolve the issue(s) informally, you may present your complaint to the Warden via the Administrative Remedy Procedure. This procedure is available to inmates confined in federal facilities to complain about any aspect of their confinement.

_____6.  Extensions are granted only if an inmate's submission is untimely by no fault of his own. Requests for extensions are only considered when submitted with the complete appeal packet.

_____7.  If you are dissatisfied with your response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534. Your appeal must be received in the Office of General Counsel within 30 days from the date of your response.

_____8.  We can only address issues within the jurisdiction of the Federal Bureau of Prisons. Your issue is one of _____ jurisdiction.

_____9.  Your appeal was rejected and returned to you on _____.

_X_10.  Other:  You should have filed your correspondence to:
                     Designations and Sentence Computation Center
                     US Armed Forces Reserve Complex
                     346 Marine Forces Drive
                     Grand Prairie, TX  75051

TOTAL P.001

To Ms Rimmer
Fax 913-551-1076

From: Doug Dyer
9/30/21

39 pages (including cover)

please Reply se Receipt

BP-10

 Gmail

**Doug Dyer <dougdyer11@gmail.com>**

---

## USPS® Item Delivered, Left with Individual EI169324508US
1 message

**auto-reply@usps.com** <auto-reply@usps.com>
To: dougdyer11@gmail.com

Mon, Nov 1, 2021 at 6:58 AM

---



Hello **douglas albert dyer**,

Your item was delivered to an individual at the address at 6:38 am on
November 1, 2021 in WASHINGTON, DC 20534 to PRISONS 20534 R5.
The item was signed for by D HILL.

Tracking Number: **EI169324508US**

*Received
at
General
Counsel
11/1/21*

### Delivered, Left with Individual



| Tracking & Delivery Options |
|---|
| My Account |

Visit **USPS Tracking**® to check the most up-to-date status of your package. Sign up for **Informed Delivery**® to digitally
preview the address side of your incoming letter-sized mail and manage your packages scheduled to arrive soon! To update
how frequently you receive emails from USPS, log in to your **USPS.com** account.

Want regular updates on your package? **Set up text alerts**.


**INFORMED DELIVERY**®
Sign up to view your mail
online or via email.

Travis R. McDonough                                    August 19, 2021

Chief US District Judge

900 Georgia Ave

Room 317

Chattanooga, Tn 37402



Re: 1:21-cv-104

Dyer v Fulgam

Your Honor,

Although I disagree that I did not exhaust my Administrated Remedies, I will
respect the Court's decision. However, I just want to bring to the Court's attention
that I just received ( August 18,2021 ) from The General Counsel of the BOP and
from The Mid-Atlantic Regional Office a reply on my request. The Reply from Mid-
Atlantic was postmarked May 14, 2021. The Reply from the General Counsel was
postmarked June 15, 2021. Both packages were sent to me at the Nashville, Tn
RRM address. Not only in my request did I give to both of them my home address,
but the BOP choose to hold these replies for 90 days and 60 days respectively.
This is the kinds of tricks and games that the BOP seems to play to delay inmates
their right to speedy response of requests.

Considering that I made my request to my case manager on April 22, then with
the RRM on April 26. Then Regional denied my request on May 7, then General
Counsel on June 7 and both Regional and General Counsel ( Central Office ) falsely
claim that I did not file with the RRM first ( indisputable ) it appears that A) they
had plenty of time and B) they tried to falsely claim that I did not file with RRM
first, even though I gave them all the proof they needed that I filed with the RRM.
Much less they could have picked up a phone and called Ms. Fulgam ?

In both of their response, there sole reason for deny was "That I must start with
the RRM". There is absolutely no question from the RRM or this Court who were
supplied with the proof that I did indeed start with my RRM. Considering the
history with the BOP filing a false document, not once but twice, even after it was

brought to their attention BEFORE they filed it the second time, how can we expect the BOP to handle this request with any competence or integrity ?

I have re-started my admin remedy request. When I contacted the RRM warden, Ms. Fulgam she asked me "I thought we already received and processed this request ?". Again, proof that I did start my request with the RRM.

My expectations are that the BOP at any level will either ignore or reply without even calculating my Earned Time Credits without some type of Court Order.

I would expect that I will have to re-file my Motion, which I apologize for taking the Courts time for this second, identical Motion. However, considering the directive from Senators Durbin, Grassley, Whitehouse, Coryn and the members of the Judicial Committee, who authored and sponsored the First Step Act, and totally agree with my interpretation, I look forward to this Court being able to adjudicate this Motion on it's clear merits.


Sincerely

Douglas A. Dyer

179 Callaway Ct

Chattanooga, Tn. 37421

423-661-1729

Dougdyer11@gmail.com

Travis R. McDonough                    September 13, 2021

Chief US District Judge

900 Georgia Ave.

Room 317                               FILED

Chattanooga, Tn. 37402                    OCT  8 2021

re: 1:21-cv-00104                      Clerk, U. S. District Court
                                       Eastern District of Tennessee
                                           At Chattanooga


Your Honor,


You denied my Motion ( 1:21-cv-00104 ) for the reason that I did not exhaust my Administrative Remedies. The reason being that the BOP said I must start with my Residential Reentry Manager "RRM".

On August 20, 2021 I re-started the process. I filed with the RRM and after 3 weeks they sent me the attached memo. In this memo they informed me that I have to file with :

"Designations and Sentence Computation Center"

So now, after wasting 3 more weeks that I have been illegally incarcerated, which all that they did was send me a one page letter with an "X" marked, they now have told me to file with this different Office. In the BOP's response in your Court they say the Admin. Remedy goes first to RRM, Then Regional and then General Counsel. In your Order on Motion to Dismiss filed on August 18, 2021 you also clearly cite the procedure on page 3 ""If the Inmate is not satified with response from warden or halfway house manager (RRM), he may appeal, using the appropriate form to the regional director within 20 days after receiving the response. If inmate is not satisfied with regional response, he may file an appeal with the national appeals administrator at the BOP's Central Office in Washington, DC......"

So again, the BOP has now arbitrarily added a new entity that was not in their objection or in The Courts order. So, now not only has 3 weeks passed that I am

illegally incarcerated based on my Earned Time Credits, but even more time will be delayed with this additional level of filing that is not anywhere in the BOP's rules or federal statutes.

This is the kind of childish tactics that the BOP continues to use to delay what Congress has ordered the BOP to do in the LAW of the First Step Act that was passed in 2018. Also, after Congress has issued several public letters and directives to the Attorney General to award these Earned Time Credits.

I am at a loss as to what to do with the BOP without some kind of court order as they are clearly playing games to deny me of due process.

What do you suggest I do ?

Sincerely

Douglas A. Dyer

179 Callaway Ct

Chattanooga, TN 37421

423-661-1729

Dougdyer11@gmail.com



**U.S. Department of Justice**
Federal Bureau of Prisons

*Nashville Residential Reentry Office*

---

*701 Broadway, Ste 124*
*Nashville, TN  37203*

September 21, 2021

Doug Dyer
Reg. No. 52293-074
179 Callaway Ct
Chattanooga, TN 37421

Mr. Dyer,

This letter is in response to your request for further explanation of the BP-9 response dated August 24, 2021.  The Administrative Remedy you filed called into question your sentence computation in regards to the First Step Act.  Sentence computations are not managed by Residential Reentry, therefore your Administrative Remedy was filed with the incorrect office and should be directed to the Designations and Sentence Computation Center (DSCC) in Grand Prairie, Texas.

I have attached your sentence computation showing your release audit was completed by DSCC on February 1, 2021.  Any further questions regarding this matter should be directed to:

Designations and Sentence Computation Center
US Armed Forces Reserve Complex
346 Marine Forces Drive
Grand Prairie, TX  75051

Sincerely,

Michelle Fulgum
Acting Residential Reentry Manager

Attachment

EVEN thou in Tenn Federal Court Both the lawyer for ht BOP and the court says: "...inmate may file a complaint with warden of halfway house and if not satisfied with response he may appeal, using the appropriate form to the Regional director within 20 days...."

NO WHERE in ~~on~~ the BOP policy statement on with Federal Court does it say to send to "Designations and Sentence Computation Center" ????

913-551-1076

To: Michelle Fulgam

From: Doug Dyer

Date: September 21, 2021

Re: my request that was sent August 18, 2021

FILED

OCT 8 2021

Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

Ms. Fulgam, with all due respect it is incredible that here we sit OVER 33 days since my request was submitted to you. You indicated to me that you would reject my request as early as our phone conversation on August 19, 2021. Yet for a simple answer of "NO" you sent me on September 8 a one sheet piece of paper, that was dated August 24 ? I still don't understand why it took over a week to send me this piece of paper ? Then it turns out that that piece of paper was wrong, as it said to send my request to a place that was inconsistent with policy and what the court ordered. On Monday September 13, we had a phone conversation that you said , you would have this corrected and faxed to me on Tuesday September 14. I received nothing from you on the 14th or since. I have called you and left a message each business day since the 14th ( 5 days ) with no return call.

Every time I have talked with you , you have been very helpful, kind and businesslike. I appreciate that, but actions speak louder than words. You are seriously violating my constitutional rights to a speedy administrative remedy, allowing me to be illegally incarcerated each and every day. What I cant understand is why it has taken 33 plus days for a simple "NO" ? Please help me understand. At some point Im not sure if this has become "personal" on your part to continue to treat me like this ?

Earlier this month, in O'Bryan v. J.W. Cox, CIV 21-4052, 2021 WL 3932275 (D.S.D. Sept. 1, 2021), the court found that the Petitioner was entitled to immediate application of the entirety of his earned time credits in accordance with the First Step Act ("FSA"). In that matter, just as in this matter, the Bureau of Prisons ("BOP") claimed that it is not required to award any prisoner time credits from the FSA until after January 15, 2022. Id. at *1. The court soundly rejected that argument, emphasizing that in accordance with the stated intent of Congress, "[t]he BOP is supposed to now get on with applying the FSA to prisoners, with the short-timers1 to get preference in the phase-in of the FSA." Id. at *4 (citing 18

U.S.C. § 3621(h)(3)). The court noted that other courts, in finding a lack of subject matter jurisdiction, have relied on the permissive "may" used in 18 U.S.C. § 3621(h)(4), but in doing so they have not accounted for the interplay between two sections of the FSA. Id. at * 2. As the court explained, 18 U.S.C. § 3621(d)(4)(B) exclusively bars credit for programs completed before December 18, 2018, but the "may" language within 18 U.S.C. § 3621(h)(4) permitted expansion of existing programs, and the BOP "may" permissively credit inmates for participation in these expanded activities. Id. The Court held: "18 U.S.C. § 3621(h)(4) should not and cannot be read by its 'may' language to be broadly applied to say that the BOP has discretion to not allow time credits either accrued after enactment of FSA to January 15, 2022 or at any time after that." Id. at *3. "No deference is to be accorded to the BOP position that it need do nothing with accrued time credits under the FSA until January 15, 2022." Id. at *4.

Ms. Fulgam, I know you are busy, I am busy also but this is out of hand. I should be awarded my First Step Earned Time Credits and be out of BOP custody that would save the BOP a lot of money, time and effort.


Doug Dyer

Cc: Judge Travis McDonough , Senior US District Judge

Travis R. McDonough

Chief US District Judge

900 Georgia Ave

Room 317

Chattanooga, Tn 37402

RE: 1:21-cv-00104

FILED

NOV 0 4 2021

Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

FILED

RECEIVED

OCT 13 2021

Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

10/13/2021

Your Honor,

As I mentioned in my letter of September 13, 2021, I re-started my Administrative
Remedy process on August 20, 2021. After 3 weeks they sent me their response.
The response , which took 3 weeks to simply mark an "X" on a form. They then
told me to file the next step to "Designations and Sentence Computation Center".

Then on September 28 after wasting an addition 16 days, they told me they made
a mistake and I should file the next step with Stacy Rimmer, Central Sector
Administrator in Kansas City, Kansas. I filed my BP-10, as instructed after several
phone calls with Ms. Rimmer. On the 29th of September, Ms. Rimmer informed
me on a phone call that she and the Region office would turn down my request. I
faxed , at her instruction, my BP-10 that day. I talked to her on the 30th of
September to verify she received my documents.

On October 13, 2021 some 14 days after she received my package I talked with
Ms. Rimmer on the phone. Even though she indicated she would turn down my
request, she emphatically stated that she would NOT send it to me until October
29, 2021. I asked her why she needed to wait, since time is of the essence and her
answer was "Because I can" and then rudely and abruptly hung up the phone call.
These are the kinds of games that the BOP plays with inmates that violate their
right to a fair and speedy process.

In meantime there continues to be rulings by Federal Judges across the country
that are forcing the BOP to obey the law and Congressional mandate to award
Earned Time Credits immediately and honor the law that clearly states that
inmates can earn these Time Credits for programs completed After the date of

enactment of the First Step Act (FSA) ( December 21, 2018 ) and that the BOP should not wait til the BOP "arbitrary and with out authorization" wait until January 20, 2022.

On October 9, 2021 Bains v Quay, Civil Action No.:3:21-cv-00353 Federal Judge ruled in favor of inmate who deserved his Earned Time Credits

On September 1, 2021 O'Bryan v. Cox, CIV 21-4052 Federal Judge also ruled in favor of inmate receiving , immediately his Earned Time Credits.

Again, according to the "on the record" directive from the Senators who were the authors of the FSA in their letters to the Attorney General and recent Federal Court rulings, I deserve to be awarded my Earned Time Credits and should be immediately moved from Home Confinement to Supervised Release.

It is clear the BOP is doing everything in their power to delay my due process and continue to spend taxpayer money to illegally over incarcerate me. However, I am following the BOP process of Administrative Remedy before I file with this court, as I have been and continue to be a model inmate who has remained incident-free, working full-time for the past 15 plus months as a law-abiding tax-paying citizen. I worked extremely hard in earning my Earned Time Credits, as did thousands of Federal inmates. The BOP needs to follow the law, directive and wishes of Congress and stop trying to NOT awarding the thousands of inmates who are trying to better themselves. The First Step Act AND Congress demand this.

Doug Dyer #52293-074

179 Callaway Ct

Chattanooga, Tn 37421

423-661-1729

Case 1:21-cv-00898-CLC-CHS Document 1 Filed 12/01/21 Page 56 of 86 PageID #: 120
Case 1:21-cv-00104-TRM-SKL Document 20 Filed 11/04/21 Page 2 of 2 PageID #: 199

2



FILED

NOV 23 2021

Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

To: Stacy Rimmer 913-551-1076

From: Doug Dyer #52293-074

Date: November 11, 2021

Re: Admin Remedy BP-10 filed September 30, 2021


Ms. Rimmer I still have not received any response to my BP-10 filed with you. You clearly acknowledge receipt on September 30. Here we sit 43 days later and I have received nothing? You also told me on Friday October 1, 2021 that you would send me a response within the required 30 days, but not sooner.

Can you please communicate with me what the status is with this filing and more importantly, the awarding of my FSA Earned Time Credits that Congress and the Act have mandated the awarding of such.


Sincerely

Doug Dyer #52293-074

Marketing Manager

Bacon Products Corporation

Dougdyer11@gmail.com

Cc: Judge Travis McDonough

**EXHIBIT D**

**Documents related to filing of BP-9, BP-10 and BP-11**

**Affidavit of Douglas A. Dyer**

*filed with BP-9, BP-10 + BP-11*

I, Douglas A. Dyer, being of sound mind and body, am competent to make this Affidavit and swear the following is true and correct from my personal knowledge, experience and memory and where I quote or reference or paraphrase another person; I believe that quote, reference or paraphrase to be correct and true to the best of my memory.

(1) "Enacted on December 21, 2018, the . First Step Act (FSA; hereinafter "The Act " ) was the result of a bipartisan legislative effort to moderately overhaul the criminal justice system .. ; Congress aimed to .enhance public safety by improving the effectiveness and efficiency of the federal prison system with offender risk and needs assessment, individual risk reduction incentives and rewards, and risk and recidivism reduction . H R Rep . No . 115 -699 at 22 ( 2018 ) . " See United States v. Simmons, 375 F. Supp. 3d 379 (2nd _ Circuit, 2019). The Act authorized:

(1.1) §3632(a). Not later than 210 days after the date of enactment of this Subchapter [July 19, 2019], the Attorney General, in consultation with the Independent Review Committee authorized by the First Step Act Qf 2018, shall develop and release publicly on the Department of Justice website, a Risk and Needs Assessment System, which shall be used to §3632(a)(1) Determine the recidivism risk of each prisoner as part of the intake process, ' and classify each prisoner as having a minimum; low, medium, or high risk of recidivism."

(1.2) On 11-26-19, Federal Bureau of Prisons ("FBOP") via Case Manager Ms. Mitchell at Lexington FMC, conducted the initial Risk and Needs Assessment via the Prisoner (Me) Assessment Tool Targeting Estimated Risk and Need (PATTERN) tool, and I was determined to have a "MINIMUM" risk of recidivism. Therefore, I am in full compliance of the above subchapter.

(2) Next, Case Manager Ms. Mitchell completed The Act's determination and assignment of Evidence-Based Recidivism Reduction Programming of the Risk and Needs Assessment System.
(2 .1) " §3632. Determine the type and amount of Evidence Based Recidivism Reduction Programming that is appropriate for each prisoner, and assign each prisoner to such programming accordingly "
(2.2) Ms. Mitchell, on multiple occasions met with me and told me to participate in what she called "All Programming" and said I was to participate in Adult Continuing Education (ACE) classes, Any and All Productive Activities, Faith-based classes and services, Non-Residential Drug Addiction Program, Prison jobs including UNICOR and all Evidence-based Recidivism Reduction Programming.

(3) Case Manager Ms. Mitchell informed me both on 11-26-19 and multiple meetings and "Team" that these assignments met "3635(3) requirements of the Act."
(3.1) "3635(3) "The term Evidence-Based Recidivism Reduction Programing means either a group or individual activity that :

(A) " has been shown by empirical evidence to reduce recidivism or is based on research indicating that its likely to be effective in reducing recidivism;

(B) is designed to help prisoners succeed in their communities upon release from prison; and

( C ) may include (iv) academic classes (vii) substance abuse treatment (viii) vocational training (ix) faith-based classes or services (xi) a prison job, including through a prison work program "

(3.2) Per Case Manager Ms. Mitchell's assignments I successfully participated and completed the following Academic (ACE) classes, Substance abuse classes, productive activities, EBRRP programs, faith-based classes and services, Prison jobs and UNICOR and assigned productive activities. ALL of these completed AFTER the date of enactment of the ACT December 21, 2018:

| PROGRAM | DAYS |
|---|---|
| UNICOR- customer service, waiver dept. | 147 |
| Prison Job- Cafeteria | 61 |
| Per 3635(3)(c)(xi) of the ACT and listed by the FBOP in its official publication On page 1 of evidence-based recidivism reduction programs and productive Activities | |
| Non-Residential Drug Abuse Program | 8 |
| Per 3635(3)(c) (vii) of the Act and page 1 of the FBOP publication | |
| BOP Threshold Re-Entry Program | 16 |
| Positive Attitude and Self-Esteem | 10 |
| Resume and Interviewing Skills | 7 |
| AARP Finance over 50 years old | 5 |
| Health and Nutrition | 1 |
| Money Smart | 10 |
| Occupational Therapy "A Matter of Balance" | 9 |
| Instructor Health Core Topic | 32 |
| ASQ Certified Quality Improvement Certification Class | 14 |
| ASQ Certification Test ( passed) | |
| All 10 above per 3635 (3)(c)(ii) and (viii) of the Act and page 1 of the FBOP Publication | |
| ACE Forex Trading Class | 8 |
| ACE United States Presidency | 8 |
| ACE World War I | 8 |
| All 3 above per 3635 (3)(c)(x) of the Act and page 4 of the FBOP Publication | |
| Religious Services | 74 |
| The History of the Church | 20 |
| Martin Luther Catechism Phase I | 20 |
| All 3 above per 3635(3)(c)(ix) of the Act | |

Total DAYS    458  of programming

(4) The Act provides at:

(4.1) " § 3632 ( d ) (4 ) ( A ) • A prisoner who completes Evidence-'Based Recidivism successfully Reduction Programming or Productive Activities, shall earn time credits as follows: (i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in Evidence-Based Recidivism Reduction Programming or Productive Activities (ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk of recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in Evidence-Based Recidivism Reductión Programming or Productive Activities.

(4.2) On approx. April 11, 2020 Ms. Mitchell completed a second consecutive PATTERN score in anticipation of my qualification for the CARES Act and determined again that my PATTERN score had me in the MINIMUM risk of recidivism category which should have triggered the " additional 5 days of Time Credits for every 30 days of successful participation......" under the Act. Vesting me with a total of 15 days for every 30 days of programming.

(4.3)  I have successfully participating in The Act's authorized Evidence-Based Recidivism Reduction Programming and· Productive Activities since the date of enactment Dec 21, 2018.  I will have programmed for 458 days and, pursuant to The Act's grant of a right to earn dimunition credits that reduce my time in captivity by programming, I will have earned 228 days of The Act's grant of time credits (458 divided by 30 = 15.26 times 15 days= 228 days) 15 days for every 30 days of programming

(5)  Under The Act, application of time credits must go towards release from prison captivity, to wit: to Supervised Release; namely:

( 5.1) §3632(d)(4)(C). Time credits earned under this paragraph by prisoners who successfully participate in Evidence-Based Recidivism Reduction Programming or Productive Activities shall be applied towards time in Prerelease Custody or Supervised Release .

(5.2) Accordingly, by The Act, my vested earned time credits from continuing Evidence -Based Recidivism Reduction Programming and Productive Activities through 6-31-20, will have Vested me 228 Days of earned time credits equal to 7 months and 18 days off my incarceration and Home Confinement, and release me to Probation and Supervised Release is thereby mandatory.

(5.3) And further, The Act requires "Sec. 102 §3621(g)(3). If the Sentencing Court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of Supervised Release after imprisonment the Director of the Bureau of ' Prisons may transfer the prisoner to begin any such term of Supervised Release at an earlier date .... " based on the application of time credits under Section 3632."

(5.4) under application of The Act, makes transfer to Probation and Supervised Release the highest application of earned time credits. This application is my due process protected liberty interest in rights granted by the federal law evidenced by The Act.

(5 .5) "§3632(d) (6). In addition, the incentives described in this Subsection shall be in addition to any other rewards or incentives for which a prisoner may be eligible. ( i.e. CARES Act and Elderly Offender status )

(6)   The Act establishes the unambiguous time table for FBOP actions:

(6 .1) Section 102 of The Act states :

 Implementation of System and Recommendations by the Bureau of Prisons. " §3631(h)(1). Not later than 180 days after the Attorney General completes and releases the Risk and Needs Assessment System [January 15, 2020] the Director of the Bureau of Prisons shall…. (B) begin to expand the effective Evidenced-Based Recidivism Reduction Programming or Productive Activities it offers …..necessary to effectively implement the "System"

(6 .2) The Act made clear that the January 15, 2020, date is when the "System" must be implemented. The effective date of The Act was even earlier than the January 15, 2020  date, namely: July 19, 2019. The statute also made clear that the Date of Enactment ( when inmates could begin earning Time Credits was December 21, 2018 ) And this fact is clear and unambiguous in The Act : "Sec. 102· §3631(b)(2). The Amendment made by this Subsection shall take effect beginning on the date that the Attorney General completes and releases the Risk and Needs Assessment System [July 19, 2019] under Subchapter D of Chapter 229 of Title 18, United States Code, as added by Section 101(a) of this Act.

(6 .3) To further support the aforementioned date of January 15, 2020, as the mandatory implementation date for the earned time credits, a memo- dated- January 15, 2020, purporting to be from the "Office of Public Affairs, 11 states:

https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act

"Today is another milestone. in implementing the First Step Act,"· said Attorney General William P. Barr. · · " Beginning today, inmates will have even greater incentive to participate in Evidence-Based Programs that prepare them for productive lives after incarceration. This is what Congress intended with this bipartisan bill." "As of January 15, 2020, inmates will be assigned to participate in Evidence-Based Recidivism Reduction Programs and Productive Activities based on an initial needs assessment conducted by the BOP. Participation and completion of those assigned programs and activities can lead to placement in Prerelease Custody or a 12-month sentence reduction under the First Step Act." ••• "In the interim, inmates will continue to be assigned to programs and activities based on their risk and needs and if eligible, will receive credit upon completion."

(6.4) My eligibility was established and confirmed by Case Manager Ms. Mitchell' s handwritten assessment determination, "FSA Eligible."

(7.1) WHEREFORE, as my qualification for and participation in FBOP programing and educational activities particularly designated and assigned me to obtain diminution credits by Case Manager Ms. Mitchell herself and calculated under the First State Act . . resulting in actual early release from incarceration of federal inmates; named Immediate Custodian's herein refusal to calculate my credits, unlawfully restrains me of my personal federal civil right of liberty under the 14th and 15th

Amendments due process and equal protection guarantee of the Federal Constitution for my release date of July 20, 2021 instead of my projected release date of March 4, 2022.

(8) There is already a precedent to this awarding of my First Step Act Time Credits:

Goodman v. Ortiz (1:20-cv-07582)

On August 25, 2020 United States District Judge Renee Marie Bumb

" III. CONCLUSION The BOP's position that a prisoner can complete the PATTERN program before January 15, 2022 with no benefit to the prisoner is contrary to the statutory language, not to mention the unfairness of such a result. Therefore, the Court concludes that Petitioner is entitled to habeas relief. The Court will direct the BOP to immediately apply Petitioner's Earned Time credit of 120 days in an accompanying Order."

The entire Order and opinion can be read at
https://www.courtlistener.com/recap/gov.uscourts.njd.437697/gov.uscourts.njd.437697.12.0.pdf

Respectfully

Douglas A. Dyer

#52293-074

# PROOF OF JOB PROGRAM

6



1:17-CR-53

FILED

APR 22 2021

Clerk, U. S. District Co.
Eastern District of Tennes
at Chattanooga

P.O. Box 22187 ~ Chattanooga, TN 37422-2187 ~ USA
1605 Shepherd Road ~ Chattanooga, TN 37421 ~ USA
423.892.0414 ~ 1.800.251.6238 ~ F: 423.892.2065
www.baconproducts.com

3/22/2021

Travis R. McDonough
Chief US District Judge
900 Georgia Ave
Room 317
Chattanooga, Tn. 37402

Your honor,

I am writing to you as supervisor and co-worker of Doug Dyer at Bacon Products Corporation.

He has been working here for 8 months, and has been doing a great job, and has a perfect attendance record with the company. I corresponded with him weekly while he was in Lexington FMC. He is determined to turn his life around, and embraced this opportunity as our Marketing Manager. The company, really needs to utilize his skills that would require him to go to meetings, sales calls, trade shows, outside of the office.

He has been very diligent while at work to adhere to the rules of his Home Confinement and I hope Doug could receive a Compassionate Release from the remainder of his sentence. I understand that he is also needed for duties in taking care of his Mom and disabled brother.

We are a small company that needs all hands-on deck and need Doug for situations that would require him to go out of the office.

Sincerely

Alex Ostovich
Vice President
Bacon Products Corporation

# EXHIBIT E

# PATTERN Score and Certificates

DATE REVIEWED: *12-3-19*

INSTITUTION: LEX UNIT: CSW Y1

INMATE NAME: DYER, DOUGLAS REG NO: 52293-074

FIRST STEP ACT (Circle One): (ELIGIBLE) / INELIGIBLE

RECIDIVISM RISK LEVEL (Circle One): (MINIMUM) LOW MEDIUM HIGH

11/6/19

Ms. Mitchell

This certificate of completion for the 16-week BOP Threshold Program that I finished Oct. 28, 2019 was NOT on my "Individualized Reentry Plan - Program Review" under Education Classes or Programs. Can you please make sure it is counted and listed on my Program Review and on Sentry.

Thank you

Doug Dyer - 52293-074

Dyer your team was prepared on the 25th of Oct. It showed that you were a participant. On your next team it will show as completing on Oct. 28, 2019. Here is a copy of the certificate. I will put the original in file.
SMMitchell



# Federal Medical Center

## Education Department

### Lexington    Kentucky

This Certifies That

## Douglas Ayer

Has completed the 5 Hour Course of Study prescribed by the Federal Bureau of Prisons

**AARP 50+ FOUNDATION FINANCES**

and is therefore entitled to this

### Certificate of Program Completion

Given at FMC Lexington, Kentucky

2-27-20

_____
Coordinator

# Graduation Certificate

## awarded to:

## Douglas Dyer

### Completion of Federal Bureau of Prisons Program

# Threshold

C. B. Ortiz
Chaplain

October 28, 2019
Date

# CERTIFICATE OF COMPLETION
# A MATTER OF BALANCE

AWARDED TO

## Douglas Dyer

12 Sentry hours

Awarded this 30 of January, 2020

*(signature)*

CDR Christina Eaker, OTR/L, MPH

# Federal Medical Center

## Education Department

### Lexington ⬡ Kentucky



This Certifies That

# Douglas Dyer

Has completed the 16 Hour Course of Study prescribed by the Federal Bureau of Prisons

**COLD WAR**

and is therefore entitled to this

## Certificate of Program Completion

Given at FMC Lexington, Kentucky

_____ 4/12/19
Ace Coordinator

_____
Supervisor of Education

Case 1:21-cv-00104-TRM-SKL Document 1 Filed 05/14/21 Page 46 of 60 PageID # 46

Case 1:21-cv-00299-CLC-CHS Document 1 Filed 12/01/21 Page 72 of 86 PageID #: 136

# Federal Medical Center

## Education Department

Lexington      Kentucky

This Certifies That

# Douglas Dyer

Has completed the Course of Study prescribed by the Federal Bureau of Prisons

**AARP FINANCES**

And is therefore entitled to this

## Certificate of Program Completion

Given at FMC Lexington, Kentucky

May 10, 2018

_Re-Entry Coordinator_



# Federal Medical Center

## Education Department

### Lexington — Kentucky

This Certifies That

## Douglas Dyer

Has completed the 16 Hour Course of Study prescribed by the Federal Bureau of Prisons

**WORLD WAR 2**

and is therefore entitled to this

## Certificate of Program Completion

Given at FMC Lexington, Kentucky

_____
Ace Coordinator        4/12/19

_____
Supervisor of Education

Case 1:21-cv-00104-TRM-SKL   Document 1   Filed 05/14/21   Page 48 of 60   PageID #: 48



# Federal Medical Center

### Education Department

**Lexington**  **Kentucky**

### This Certifies That

# Douglas Dyer

Has completed the 16 Hour Course of Study prescribed by the Federal Bureau of Prisons

### THE U.S. CONSTITUTION

and is therefore entitled to this

## Certificate of Program Completion

Given at FMC Lexington, Kentucky

11/9/19

_____
Ace Coordinator

_____
Supervisor of Education

# Federal Medical Center

### Education Department

**Lexington**     **Kentucky**



### This Certifies That

# Douglas Dyer

Has completed the Course of Study prescribed by the Federal Bureau of Prisons

**FINANCIAL PEACE UNIVERSITY**

And is therefore entitled to this

## Certificate of Program Completion

Given at FMC Lexington, Kentucky

August 14, 2018

_Re-Entry Coordinator_

Case 1:21-cv-00104-TRM-SKL Document 1 Filed 05/14/21 Page 50 of 60 PageID #: 50

# Certificate of Completion

Presented to

**DOUGLAS DYER**

For successfully completing the

**Drug Abuse Education Course**

The Drug Abuse Education Course is a minimum of 12 hours. The goal of this program is to help the offender to make an accurate evaluation of the consequences of his/her alcohol/drug use and consider the need for treatment.

12-21-2018

Ms. Reis, DTS     12/21/2018
FMC Lexington     Institution

# Federal Medical Center

### Education Department

**Lexington**    **Kentucky**



## This Certifies That

# Douglas Dyer

Has completed the 16 Hour Course of Study prescribed by the Federal Bureau of Prisons

## COMMERCIAL REAL ESTATE 2

and is therefore entitled to this

### Certificate of Program Completion

Given at FMC Lexington, Kentucky

_____  2/8/19
Ace Coordinator

_____
Supervisor of Education

# Federal Medical Center

## Education Department

Lexington  Kentucky

This Certifies That

# Douglas Dyer

Has completed the 16 Hour Course of Study prescribed by the Federal Bureau of Prisons

**STOCK MARKET TRADING**

and is therefore entitled to this

## Certificate of Program Completion

Given at FMC Lexington, Kentucky

_____
Supervisor of Education

4/22/19
_____
Ace Coordinator

# Certificate of Completion

This is to certify that:

## Douglas Dyer

### Has successfully completed the

*Resume Writing & Interview Skills*

**Requiring  20  hours of Training**

**In Witness Thereof the Undersigned**

**Given this  16th  day of  April  , two thousand 19**



Case 1:21-cv-00104-TRM-SKL   Document 1-1   Filed 05/13/21



# Certificate of Completion

This certificate is awarded to:

D. Dyer

For participating in the

Health and Nutrition Class (1 hour) at FMC Lexington

November 6, 2019

November 2019

Signed: T. Pearson, Rec. Spec.



# Federal Medical Center

### Education Department

### Lexington          Kentucky

### This Certifies That

# Douglas Dyer

Has completed the 8 Hour Course of Study prescribed by the Federal Bureau of Prisons

**MONEY SMART**

and is therefore entitled to this

### Certificate of Program Completion

Given at FMC Lexington, Kentucky

5/22/19

_____
Ace Coordinator

Case 1:21-cv-00299-CLC-CHS   Document 1   Filed 12/01/21   Page 82 of 86   PageID #: 146

# Federal Medical Center

## Education Department

Lexington  Kentucky

This Certifies That

## Douglas Dyer

Has completed the 16 Hour Course of Study prescribed by the Federal Bureau of Prisons

**US PRESIDENTS**

and is therefore entitled to this

## Certificate of Program Completion

Given at FMC Lexington, Kentucky

4/7/19

_Ace Coordinator_



Case 1:21-cv-00293-CLC-CHS   Document 1   Filed 12/01/21   Page 83 of 86   PageID #: 147



ASQ

Douglas A. Dyer

Certified Quality Improvement Associate

| Certificate Number | Date Issued |
|---|---|
| 14827 | 2/21/2020 |

July 6, 2020

65854051
Douglas A. Dyer
179 Callaway Ct
Chattanooga, TN 37421-0608

Dear Douglas A. Dyer:

CONGRATULATIONS! The Certification Council is pleased to announce that you have passed the written examination for the ASQ Certified Quality Improvement Associate Certification. You have reached an important milestone in your professional development.

Certification is not a license. It is peer recognition of proficiency in the prescribed body of knowledge. Please refer to your certification in terms which are consistent with the legal requirements and use of certification in the location in which you reside. We recommend that you refer to yourself as an "ASQ Certified Quality Improvement Associate." It is very important that you associate the Society with your certification.

Enclosed is your certificate and ASQ Code of Ethics. As a certified individual, the ASQ Code of Ethics should serve as your professional guide. Please review this information and call ASQ Headquarters if there are any discrepancies.

You can be rightfully proud of your certification as recognition of your professional knowledge by your peers in a professional society.

We look forward to your continued participation in the Society.

Sincerely,

Alan M. Bell, Chair
ASQ Certification Council

600 N. Plankinton Ave. | Milwaukee, WI 53203-2914 | 800-248-1946 | www.asq.org

Case 1:21-cv-00204-CLC-CHS Document 1-1 Filed 12/01/21 Page 84 of 86 PageID #: 148
Case 1:21-cv-00204-TRM-SKL Document 1-1 Filed 05/14/21 Page 58 of 60 PageID #: 58

# American Society for Quality

**Douglas A. Dyer**

has satisfactorily fulfilled the requirements established by the Society for professional attainment in

## Quality Improvement

and is, therefore, certified by the Society as a

## Certified Quality Improvement Associate

Certification Number    14827
Certification Date    2/21/2020



_____
Chair



_____
Chair, Certification Board

```
Court Name: U S District Court
Division: 1
Receipt Number: C1010736
Cashier ID: williams
Transaction Date: 12/01/2021
Payer Name: Alison Dyer
---------------------------------
WRIT OF HABEAS CORPUS
 For: Douglas Dyer
 Amount:       $5.00
---------------------------------
Paper check
 Check/Money Order Num: 734
 Amt Tendered:  $5.00
---------------------------------
Total Due:      $5.00
Total Tendered: $5.00
Change Amt:     $0.00

1:21-cv-299


Only when bank clears the check,
money order, or verifies credit of
funds is the fee or debt officially
paid or discharged.  A $53 fee will
be charged for a returned check.
```